## PRINCE *v.* ROBINSON'S ADM'RS.*

*(Circuit Court, D. Colorado. October Term, 1882.)*

EXECUTORY CONTRACT—DEATH OF PARTY THERETO—EFFECT OF

On the fifth day of March, 1880, George B. Robinson executed and delivered to plaintiffs' assignor options for stock as follows: " For value received, D. F. Verderal may call on me for 500 shares of the capital stock of the Robinson Consolidated Mining Company, at five dollars per share, at any time until January 1, 1881. The bearer is entitled to all dividends declared during the time. [Signed] G. B. ROBINSON." Upon the contracts were imprinted words signifying that they were redeemable at the American Exchange National Bank, New York. Robinson died early in December, 1880. After his death, and within the time prescribed in the contracts, but before administration on the estate of Robinson, plaintiff appeared at said bank, demanded the stock, and tendered payment therefor, which was refused. After letters of administration plaintiff sues, etc. *Held,* that the agreements were merely executory, and no right to action had accrued thereon at the time of Robinson's death. At that time something remained to be done by both parties. One of them having become incapable of acting, it follows that the agreement could not be executed until administrators were appointed. The administrators are not bound, no demand having been made on them within the time limited by the contract, or at any time.

On Motion to Set Aside Verdict for Defendants, and Enter Verdict for Plaintiff.

*Willard Teller,* for plaintiff.

*G. G. Symes,* for defendants.

HALLETT, D. J. This suit against the administrators of George B. Robinson, deceased, is brought on two contracts executed by Robinson, in his life-time, to D. F. Verderal and L. L. Verderal, and by them assigned to plaintiffs.

The first of these contracts is as follows:

"NEW YORK, March 5, 1880.

" For value received, D. F. Verderal may call on me for 500 shares of the capital stock of the Robinson Consolidated Mining Company, at five dollars per share, any time until January 1, 1881. The bearer is entitled to all dividends declared during this time.

" Expires December 31, 1880.        G. B. ROBINSON."

*From the Colorado Law Reporter.

And the second is for the same number of shares, and in the same words, except the name of the promisee. At the time the contracts were executed, words were impressed thereon, signifying that they were redeemable at the American Exchange National Bank, New York city, and it is conceded that they were payable at that place. Robinson died early in December, 1880, before the expiration of the time in which the stock could be demanded, and soon thereafter, and during the same month of December, plaintiff called on the bank for the stock, offering to pay the price mentioned in the agreement. The officers of the bank refused to deliver the stock or accept the money, saying, in substance, that by the death of Robinson their authority to act was withdrawn. At that time letters of administration on the estate of Robinson had not been issued. Defendants were appointed to be administrators in January, 1881, and about the twentieth of that month tendered the stock to plaintiff, and plaintiff refused to accept it. The stock had then declined below the price mentioned in the agreement.

No question is presented as to the character or validity of the contracts. But the point in dispute is as to the sufficiency of the demand for the stock at the bank, after the death of Robinson, and before administrators of his estate were appointed.

It will be observed that the agreements were executory, and no action had accrued thereon at the time of Robinson's death. The demand necessary by the terms of the agreements to secure the stock, or damages for the failure to deliver it, had not then been made, and it was uncertain whether such demand would be made. These agreements, usually called options, giving the promisee a right to call for stock, leave the whole matter in his election, so that it is impossible to say that they will ever be executed. Clearly enough, there was no right of action in plaintiff, on these agreements, against Robinson in his life-time, and if not against him, in what manner shall it be said that the action may arise against his personal representatives? As something was yet to be done by both parties to the agreements, and one of the parties had become incapable of action, it would seem to follow that the agreements could not be executed, nor could there be a default in executing them without some one to represent the deceased party. A demand was to be made for the stock. Of whom? Not of Robinson, he being dead; but of some one having authority to represent his estate. The money was to be paid for the stock, not to Robinson, but to his personal representatives. These things could not be done until administrators of the estate should be appointed,

for the reason that, in so far as they were to be done by Robinson, there was no one to act. It is not the case of a contract fully executed by the survivor, leaving only a duty to be performed by the deceased; as where one sells property and receives the consideration, and dies; or borrows money, and dies before repaying it. In this instance, something was to be done by plaintiffs and by Robinson which had not been done at the death of the latter. In other words, the contracts were executory at Robinson's death, and to proceed in the execution of them, or to declare a breach of them, in the absence of the representatives of the estate, is, in the nature of things, impossible. Not having called the stock in the life-time of Robinson, plaintiff was bound to demand it of the administrators, and as the demand was not made, there is no right of action. The point that the death of Robinson did not dissolve the contracts, or absolve his estate from liability, which was much pressed in argument, may be conceded. But that is not the matter in issue. In respect to the unsettled affairs of deceased persons, the law can do no more than to appoint a living representative for the deceased, and bind him to fulfill the latter's obligations to the extent of the assets in his hands. In doing so, loss must often ensue, for which there is no remedy.

The circumstance that a place for delivering the stock and receiving the money was specified, is of no weight. Whether the contracts are to be understood as requiring Robinson to be present at the bank to fulfill them, or to appoint the bank, or some other person, to act for him, the result is the same. In any case, he was incapable of acting in person, or by agent, at the time the stock was demanded, and no demand on him at the bank or elsewhere would be effectual. As the administrators were not then in authority, a demand on them could not be made. And so it turns out that plaintiffs' proceeding in that behalf was entirely nugatory.

The motion will be denied.