# IN RE ESTATE OF GUSTAF O. MILLER.
## C. C. HOLMES, APPELLANT.[1]

February 28, 1936.

No. 30,784.

*Allen V. Junkin,* for appellant.

*Bentley & Christianson,* for respondent representative of estate of Gustaf O. Miller.

*Thomas Mohn* and *Horace W. Mohn,* for respondent Mrs. G. O. Miller.

JULIUS J. OLSON, JUSTICE.

On May 24, 1928, C. C. Holmes and one Miller entered into an option contract under the terms of which Holmes was given the privilege of purchasing 113 shares of stock in Miller & Holmes, Inc. for $71,218.50. At the time of making the contract Holmes paid Miller $3,560.92. This sum, in addition to being consideration for the option, might, at the election of Holmes within the option period,

[1]Reported in 265 N. W. 333.

be used for the purchase of a lesser number of shares at the stipulated price of $630.25 per share. If the option was exercised, Holmes was to be allowed five per cent interest upon the deposit from the time of the making of the contract until the stock was purchased. The time limit of the option was June 1, 1933. Miller died May 27, four days before its termination.

On May 31 Holmes mailed a letter to Miller and another to the "Estate of G. O. Miller" stating that he exercised his option to the extent of taking the shares that the deposit money with accumulated interest would purchase at the agreed price. This he computed to be seven shares.

On June 2 Mrs. Miller petitioned the probate court for her own appointment as administratrix of her husband's estate. There were objections filed against her so acting. On June 23 one Peterson was appointed special administrator. On that day a petition was filed seeking to establish a purported lost will. Mrs. Miller opposed this. The matter dragged along until November 21, 1933, when the court refused to admit the alleged lost will. On February 16, 1934, Mr. Peterson was appointed general administrator.

Shortly before Mr. Peterson's appointment as general administrator, January 24, 1934, Holmes filed a claim against the estate of Miller, attaching the option contract to his statement of claim. He thereby sought to fasten liability upon the estate in the sum of $4,771.63, that being his computation of the amount due him under the option contract, which, so he affirmed, had never been performed by Miller "although demand was made so to do and by reason of the premises the said contract is cancelled and rescinded for breach thereof by the said G. O. Miller." He further deposed "that in the event claimant is indebted to the estate of G. O. Miller, deceased, then the claim herein is for due and proper offset in said sum against any indebtedness owing by claimant to said estate." It will be noted that this claim was filed prior to Mr. Peterson's appointment as general administrator.

On July 28 the administrator wrote Mr. Holmes, in substance: That the writer had just been informed of the option agreement entered into between Miller and Holmes; that as representative of

the Miller estate he was ready to deliver the seven shares of stock in conformity with Holmes' claim when he exercised his option. He ended the letter by saying: "I can mail these stocks to you by registered mail or deliver them to you personally, please advise which way of delivery you desire." On July 31 Holmes wrote stating that the matter was in the hands of his attorney, upon whom he had called and had been informed that the attorney had written the attorneys for the administrator relative to the matter. On July 25, 1934, the attorneys for the administrator had written the attorneys for Holmes stating: "We have also just discovered that Mr. Holmes has written a letter to the Estate of G. O. Miller, May 31, 1933, stating that he would exercise the option and would accept seven shares of stock of the Miller & Holmes company * * *. Mr. Axel E. Peterson, the representative of the estate, did not know of this letter of Mr. Holmes, nor did the writer, due to the fact that the letter was delivered to the G. O. Miller store and was not brought to our attention." Then follows a statement to the effect that Mr. Peterson had informed his attorneys that he was ready and willing to deliver the shares wanted by Holmes in his letter of May 31, 1933. On July 27 the attorneys for Holmes answered that the contract had been rescinded for "failure to perform by Miller or the estate" and demanded "the amount set forth in the claim as filed and for the reasons therein given." The probate court on February 1, 1935, disallowed the claim. Upon appeal to the district court the facts were found substantially as hereinbefore related, and as conclusions of law that court directed that the judgment of the probate court be affirmed with costs. Judgment was thereupon duly entered, and Holmes appeals.

■ As there is neither a bill of exceptions nor settled case, there is for consideration here the single question of whether the findings of fact sustain the conclusions of law. Elton v. N. W. Nat. L. Ins. Co. 192 Minn. 116, 255 N. W. 857, and cases therein cited.

■ It is claimant's position here that because of the long delay occurring between the time when he exercised his option and the time when the administrator offered to perform, as a matter of law he is entitled to rescission; that the findings of the court con-

clusively negate its conclusions of law, hence that there should be reversal.

The contract was purely executory. Claimant had the right thereunder to purchase all or any part of the 113 shares therein involved. No cause of action had accrued at the time of Miller's death. The contract gave claimant the right, within the option period, to demand the stock at his election. He was the only one who could determine whether the option would be exercised. It is thus plain that there was no cause of action in the claimant upon this agreement as against Miller at the time of the latter's death. There was something to be done by both parties to this agreement before there could be compliance with it, and the initial move was left to claimant.

This is not a question involving title to real estate, where same passes immediately upon the death of the ancestor to his heirs. That is not true respecting personalty. Where a person dies intestate the title to his personal property vests in the administrator for the purpose of administration. Weis v. Kundert, Jr. 172 Minn. 274, 215 N. W. 176, and cases therein cited. No heir of Miller could comply with claimant's demand for the stock. Obviously that was a duty to be performed by decedent's administrator. Upon him no demand has ever been made. As soon as he was informed that claimant had sought to exercise his option he at once expressed a willingness to perform. Under these circumstances it seems clear to us that claimant's claim of right to rescind is without foundation.

As heretofore noted, we are limited in our review to the determination of the single question of whether the findings sustain the conclusions of law. Obviously, the court in its findings determined that the administrator had acted with diligence and was not guilty of laches in attempting to perform under the option contract. At the time claimant filed his claim in the probate court no general administrator had been appointed, hence no notice or order had as yet issued for hearing upon claims. There was no one officially connected with Miller's estate who had any notice or knowledge of claimant's contract until July, 1934. That is the inference that must necessarily be drawn from the correspondence taking place

between the administrator and his attorneys on the one hand and claimant and his attorneys on the other.

Claimant has elected to stand upon what he claims are his legal rights. He has been offered everything that could be tendered him in compliance with his own election to make the option effective.

The case of Prince v. Robinson's Admrs. 14 F. 631, seems in point. There Robinson had executed an option to plaintiff. By its terms it was to expire January 1, 1881. Robinson died in the early part of December preceding. Under the option agreement Prince could demand the stock at a certain bank. Prince sought to exercise his option by tendering the money to the designated bank. This he did within the option period but after Robinson's death. The bank refused to act because the death of Robinson had destroyed its agency. The court held that the agreement was merely executory and that no cause of action had accrued thereon at the time of Robinson's death. As the death of the latter made performance impossible, the agreement could not be executed until administrators of Robinson's estate had been appointed. There, as here, the administrator when appointed tendered the stock, but plaintiff refused to accept it because the stock had declined in value below the price mentioned in the agreement.

Whether claimant has any cause of action now we need not determine. Certainly his cause founded upon rescission, in view of the court's findings, cannot be sustained. That is the only question before us and necessarily the only issue decided.

The judgment is affirmed.