STATE EX REL. ARTHUR T. KRAUSMANN v. WILLIAM B. STREETER AND OTHERS (BOARD OF BARBER EXAMINERS).[1]

June 25, 1948.

No. 34,698.

[1]Reported in 33 N. W. (2d) 56.

*F. V. Davidson* and *Oscar G. Haugland,* for appellant.

*Robert F. Koch,* Special Assistant Attorney General, for respondents.

MATSON, JUSTICE.

Relator appeals from a judgment quashing an alternative writ of mandamus. The writ was directed to the respondent Board of Barber Examiners of the state of Minnesota ordering it to issue to relator a certificate of registration as a registered teacher of barbering in accordance with the provisions of L. 1945, c. 159 (M. S. A. 154.01-154.26) or to show cause why such certificate should not be issued.

The above act, which went into effect on July 1, 1945, provides that no person may teach barbering in Minnesota without first being issued a certificate of registration as a teacher by the State Board of Barber Examiners. Under the act, a certificate may be obtained in either of two ways, namely, (1) by satisfying certain requirements as to age, education, and examination; or (2) by qualifying under the grandfather clause of M. S. A. 154.065, subd. 7, which provides:

"Any person *now operating and instructing or teaching* in a school of barbering duly licensed under the laws of Minnesota may be issued a license under this section, without taking such examination, upon payment of the fee herein prescribed." (Italics supplied.)

Relator, who does not have a high school education, has not taken steps to establish the equivalent thereof and is not eligible to acquire a certificate by examination. He asserts, however, that he is entitled to a certificate without examination under the above grandfather clause. Relator became a licensed barber in 1934 and has held his barber's license ever since. After 1934, he did further study in all phases of scientific barbering and upon a conclusion of those studies passed an examination given by the National Educational Council of Associated Master Barbers of America. In 1937, he was awarded a diploma as a teacher of barber science. As a full-time member of the teaching staff of the Moler Barber College of Minneapolis, he taught barbering from 1934 to 1938 and again from 1940 to April 1943. During the period from 1938 to 1940 he operated a beauty parlor. The trial court specifically found that relator from April 1943 to June 1945 was employed in a war plant, and that during

this period he obtained time off from such employment on an average of about once a month, when he returned to the Moler Barber College to assist the operator thereof in the teaching of barbering. Uncontradicted testimony justifies an amplification of these findings, to the effect that by reason of the war large numbers of men were inducted into the services whereby the number of students at the barber college, at and shortly prior to April 1943, had decreased to such an extent that only one full-time teacher was needed. As a result, relator's services were no longer required on a full-time basis. Relator was also subject to the selective service act, and in common with other men of his age was urged by his draft board to enroll in the armed forces or engage in defense industry. The draft board urged him to go into defense work because his age made him unsuitable for active military service. It was under and by reason of these circumstances that relator gave up full-time teaching and engaged in war-plant employment.

Relator applied on May 17, 1946, for a teacher's certificate under § 154.065, subd. 7. His application was denied by the respondent Board of Barber Examiners on the ground that the teaching he was doing when the act was enacted or became effective was not of the type which would entitle him to a certificate without an examination. The trial court made similar findings in effect and found that respondents had not acted in an arbitrary or capricious manner but had exercised a sound discretion in refusing to issue relator a license to teach. This appeal is from the judgment quashing the writ of mandamus.

1. Appellant has neglected to include in the printed record the trial court's order (or a summary thereof) allowing the settled case. Without such order there is no settled case, and without a settled case no consideration can be given upon appeal to a determination of whether the evidence sustains the findings of fact. In the absence of a settled case, the findings of fact are presumed correct, and the only question is whether such findings sustain the conclusions of law. Hammond v. Flour City Coal & Oil Co. 217 Minn. 427, 14 N. W. (2d) 452; Doyle v. Swanson, 206 Minn. 56, 288 N. W. 152; In re

Estate of Miller, 196 Minn. 543, 265 N. W. 333; State ex rel. Yapp v. Chase, 165 Minn. 268, 206 N. W. 396; 1 Dunnell, Dig. & Supp. § 344. Here, pursuant to M. S. A. 605.04, the clerk of the trial court transmitted to this court the original record, judgment roll, and settled case, and we therefore do not have an absence of a settled case as contemplated by the above decisions. The original records transmitted under such statute, although not a substitute for a complete printed record, may be referred to in determining whether there is a settled case. In order to insure timely and adequate consideration of a cause by all members of the appellate court, good practice requires a complete printed record, and although it need not include the whole of the trial court's order for a settled case, nevertheless it should at least contain a statement indicating the date of its entry and the fact that the original thereof will be forwarded to this court.

2-3-4. Are the findings of the trial court that the respondent board did not act in an arbitrary and capricious manner to be sustained? What is meant by the statutory provision that "Any person now * * * teaching in a school of barbering * * * may be issued a license * * * without taking such examination * * *"? The words "now * * * teaching," as used in § 154.065, and words of similar import, such as "at the time of the passage of this act," are uniformly held to mean not the time of enactment, but the time when the act takes effect. Mills v. State Bd. of Osteopathic Registration & Examination, 135 Mich. 525, 98 N. W. 19, 3 Ann. Cas. 735; State ex rel. Churchill v. Bemis, 45 Neb. 724, 64 N. W. 348; Ex parte Lucas, 160 Mo. 218, 61 S. W. 218; Patrick v. Perryman, 52 Ill. App. 514. Although the act took effect on July 1, 1945, it does not follow that in order to qualify relator must have been actually and physically teaching on that day or at any time within an arbitrary number of days immediately prior thereto. An absolutely literal interpretation would bring about the absurd result that "now * * * teaching" would require relator to teach on the very day the act went into effect, at which time teaching would be illegal unless the teacher had a certificate. In ascertaining legislative intent, there is a pre-

sumption that the legislature did not intend a result that is absurd, impossible of execution, or unreasonable. M. S. A. 645.17. Aside from avoiding an unreasonable result, such an exception clause should receive a liberal interpretation so as to accomplish its intended purpose. State v. Zeno, 79 Minn. 80, 81 N. W. 748, 48 L. R. A. 88, 79 A. S. R. 422; Matter of Tucker v. N. Y. State Bd. of Pharmacy, 127 Misc. 538, 217 N. Y. S. 217; Commonwealth Air Transport, Inc. v. Stuart, 303 Ky. 69, 196 S. W. (2d) 866. It becomes important, therefore, to keep the fundamental legislative objective in mind. The purpose of an exception or grandfather clause is to exempt from the statutory regulations imposed for the first time on a trade or profession those members thereof who are then engaged in the newly regulated field on the theory that they who have acceptably followed such profession or trade for a period of years, or who are engaged therein on a certain date, may be presumed to have the qualifications which subsequent entrants to the field must demonstrate by examination. Watson v. Maryland, 218 U. S. 173, 30 S. Ct. 644, 54 L. ed. 987; Hart v. Folsom, 70 N. H. 213, 47 A. 603; Annotation, 136 A. L. R. 219. The clause was designed to protect those persons who at and prior to the effective date of the statute were engaged in the teaching of barbering and who, as a safeguard for the public welfare, had thereby demonstrated their competence. Matter of Tucker v. N. Y. State Bd. of Pharmacy, 127 Misc. 538, 217 N. Y. S. 217. With this purpose in mind, it would indeed be a narrow interpretation to ascribe to the legislature an intent to exclude from the protection of the grandfather clause those active practitioners of the trade who at and prior to July 1, 1945, were temporarily prevented from continuing direct and active participation in the teaching of barbering because of circumstances wholly beyond their control, such as illness, the breaking of a leg, or the destruction of the school by fire. Obviously, such unavoidable and temporary incapacity has nothing to do with their demonstrated competence and should not deprive them of the intended benefits of the act. A reasonable and liberal interpretation of the grandfather clause must, in determining who qualifies thereunder without examination as a present practitioner,

take into consideration not merely the element of time as to direct and active performance as a teacher, but also whether the applicant has in fact abandoned his trade or has only suspended active or full-time participation therein during and because of temporary circumstances wholly beyond his control.

Illustrative of this principle of reasonable interpretation, in keeping with the manifest intent of the legislature, is the Tucker case, wherein petitioner sought a writ of mandamus to compel the state pharmacy board to transfer his registration certificate from his old drugstore to a new one at a different location. The grandfather clause of the New York pharmacy statute provided (127 Misc. 540, 217 N. Y. S. 219):

"* * * any person, not a licensed pharmacist * * *, who at the time of the passage of this act owns a registered pharmacy or a registered drug store * * *, *may continue to own and conduct the same* in accordance with the provisions of this article." (Italics supplied.)

Petitioner owned a drugstore when the statute was enacted, but on May 10, 1925, he was dispossessed of his store building by legal proceedings. The following August he moved his store to his new location, whereupon the state pharmacy board refused to transfer his license to the new store. The court in granting the writ said (127 Misc. 541, 217 N. Y. S. 219):

"It would be a very narrow and arbitrary construction of the exception to hold that, if a particular drug store conducted by a person not a licensed pharmacist was destroyed by fire, or the property was condemned for the public use, or the landlord refused to renew a lease of the premises in which the store was conducted, the privilege granted by the exception should thereupon cease and determine. All that was intended by the exception in question was that the person who was conducting a drug store as an unlicensed pharmacist, in order to be permitted to go on with the business, must continue to own and conduct a drug store not uninterrupted in the absolute sense. *He continues the business uninterrupted, within the meaning*

*of the statute, even if he experiences temporary interruption, when he does not abandon the conduct of the business. Whether or not he abandons the business of conducting a drug store or pharmacy depends upon the circumstances, and is a matter to be determined upon the facts of each case.* If, for example, a building in which a drug store is being conducted by an unlicensed pharmacist is totally destroyed by fire, and it is impossible or impracticable for the druggist to continue business at that location, he would not be held to have abandoned the conduct of the drug business during a reasonable time required for him to adjust his affairs, obtain a new location, and restock his store." (Italics supplied.)

5. In the instant case, relator was indeed compelled by circumstances beyond his control to give up full-time teaching temporarily. Surely he had no control over the reduction in the number of barber college students arising from a world war that absorbed the entire man power of the nation. He was not required, in order to manifest an intent not to abandon his trade, to remain idle and not engage in other useful employment. If we assume that he was in fact not urged or practically compelled by his draft board to enter a war plant, it obviously would not have been to his credit if he had voluntarily chosen not to make a useful contribution to the war effort. He continued to manifest a permanent and continued interest in barber teaching by regularly engaging therein on a part-time basis. He who adapts himself to the requirements of his country in time of war is not to be penalized. It is also to be noted that the statute in using the word "teaching" does not indicate whether the teaching must be full-time or part-time. The general rule is that a practitioner of a trade or profession, in the contemplation of the grandfather clause, is one who habitually holds himself out to the public as such (Hart v. Folsom, 70 N. H. 213, 47 A. 603; State v. Bryan, 98 N. C. 644, 4 S. E. 522; Sanborn v. Weir, 95 Vt. 1, 112 A. 228), and, although the extent of his practice is not controlling, it must be sufficiently regular, according to the circumstances of the particular case, to denote a continuing occupation. Sanborn v. Weir, *supra.* Here, relator's part-time teaching emphasized that, in spite of conditions be-

yond his control, his regular occupation as a teacher continued during the time contemplated by the statute. That relator is a man of good character and of long experience as a teacher of barbering is conceded. Under the circumstances, the respondent Board of Barber Examiners acted arbitrarily and failed to exercise a sound discretion in denying relator a teacher's certificate under § 154.065.

The judgment of the trial court is reversed.

Reversed.

PETERSON, JUSTICE (dissenting).

I dissent.

