[Nos. 8697-8699, 8702, 8705-8711. Department Two. July 11, 1910.]

*In the Matter of the Applications of* F. A. CHRISTENSEN *et al., for Licenses to Treat the Sick.*[1]

PHYSICIANS AND SURGEONS—LICENSE—STATUTES—CONSTRUCTION. Under Rem. & Bal. Code, § 8389, authorizing persons who desire to treat the sick to register their diplomas and receive a license on the payment of a fee, provided that they show evidence satisfactory to the examining board that they have been "legally" engaged in practice prior to the passage of the act, and are graduates of colleges or schools of prescribed qualifications, "or by having been in continuous practice in one locality in this state for the past two years," and § 8406, providing that licensees shall use only such titles as are designated in their diplomas, "or those having no diplomas" only such as are designated in their licenses, an applicant is entitled to a license upon a showing that he has been in continuous practice in one locality for the two years previous to the passage of the act, without any diploma, and although not "legally" engaged in practice as required by the then existing statute making practice without a license a misdemeanor.

Appeals from judgments of the superior court for King county, Holcomb, J., entered in October and December, 1909, reversing decisions of the board of medical examiners and directing licenses to applicants to practice medicine, upon trials *de novo* before the court without a jury.   Affirmed.

*Howard G. Cosgrove* and *Higgins, Hall & Halverstadt*, for appellant, contended, among other things, that the only purpose of statutory construction is to determine the intent of the legislature and adjudge the effect thereof.   *Howlett v. Cheetham*, 17 Wash. 626, 50 Pac. 522; *Palmer v. Laberee*, 23 Wash. 409, 63 Pac. 216.   A construction which will lead to mischievous and absurd results must be avoided.   *State ex rel. Chamberlin v. Daniel*, 17 Wash. 111, 49 Pac. 243.   In construing statutes courts will, if possible, avoid a construction which will render an act unconstitutional.   *Armour & Co. v. Western Construction Co.*, 36 Wash. 529, 78 Pac. 1106. In construing statutes, the court will look to the old law, the

[1]Reported in 109 Pac. 1040.

mischief and the remedy. *State v. Stewart*, 52 Wash. 61, 100 Pac. 153. The purpose of a proviso is to restrain or qualify, not to enlarge what precedes it. Black, Interpretation of Laws, pages 271-273. A construction given to a statute by those charged with the duty of executing it ought not to be overruled without cogent reasons. *United States v. Moore*, 95 U. S. 760; *Pennoyer v. McConnaughy*, 140 U. S. 1; *Edwards' Lessee v. Darby*, 12 Wheat. 206; *United States v. State Bank of North Carolina*, 6 Pet. 29; *United States v. Macdaniel*, 7 Pet. 1. The purpose of this statute is protection to the health of the public. *State v. Carey*, 4 Wash. 424, 30 Pac. 729; *State v. Sharpless*, 31 Wash. 191, 71 Pac. 737, 96 Am. St. 893; *State ex rel. Smith v. Board of Dental Examiners*, 31 Wash. 492, 72 Pac. 110; *In re Aubrey*, 36 Wash. 308, 78 Pac. 900, 104 Am. St. 952; *State v. Brown*, 37 Wash. 97, 79 Pac. 635, 107 Am. St. 798, 68 L. R. A. 889. The construction contended for by the respondents would exempt this class of practitioners from the payment of a fee and render the law absurd and unconstitutional. *State v. Hinman*, 65 N. H. 103, 23 Am. St. 22; *State v. Pennoyer*, 65 N. H. 113, 5 L. R. A. 709; *Soon Hing v. Crowley*, 113 U. S. 703; *Yick Wo v. Hopkins*, 118 U. S. 356; *State v. U. S. & Canada Express Co.*, 60 N. H. 219; *McCulloch v. Maryland*, 4 Wheat. 316. No right can be founded on an illegal act, and practice by the daily commission of a misdemeanor by violating a law is not a "practicing" of medicine, etc. *Reed v. Johnson*, 27 Wash. 42, 67 Pac. 381, 57 L. R. A. 404; *State v. Wilson*, 61 Kan. 791, 60 Pac. 1054; *Deaton v. Lawson*, 40 Wash. 486, 82 Pac. 879, 111 Am. St. 922, 2 L. R. A. (N. S.) 392; *Commonwealth v. Rice*, 93 Ky. 393, 20 S. W. 431; *State v. Taylor*, 140 Iowa 138, 118 N. W. 301; *State ex rel. Eberts v. Ohio State Medical Board*, 60 Ohio St. 21, 53 N. E. 298; *Dent v. West Virginia*, 129 U. S. 114; *State v. Davis*, 194 Mo. 485, 92 S. W. 484, 4 L. R. A. (N. S.) 1023.

*J. P. Wall, Milo A. Root, John E. Humphries, George B. Cole, Joseph R. Anderson, J. B. Keener, Ray & Dennis,* and *Stallcup & Keyes,* for respondents.

PARKER, J.—These cases involve the construction of chapter 192, Laws of 1909, p. 677 (Rem. & Bal. Code, § 8386 *et seq.*), relating to the practice of medicine and other systems or modes of treating the sick or afflicted. There are certain undisputed facts, alike in each case, which we regard as determinative of the right of each applicant to practice his or her mode of treatment. We will therefore dispose of all the cases in this one opinion.

Each of these applicants filed with the board of medical examiners created by this law an application for a license to practice, claiming the right to a license under the provisions of the law relating to the licensing of persons who were engaged in practice of their respective modes of treatment prior to the passage of the law. The board refused to issue license in each case, and thereupon each applicant appealed to the superior court, where his or her right to a license was tried *de novo* as the law provides. These trials resulted in findings and judgment in each case, reversing the decisions of the board of medical examiners and directing a license to be issued to each of the applicants accordingly. From these judgments, the board of medical examiners has appealed to this court.

The learned trial court found in substance, and it is not disputed here, that each of these applicants was for more than two years prior to March 18, 1909, the date of the approval of the law, a resident of this state, and had for the same period been in continuous practice in one locality in this state, of his or her respective mode of treatment. We will consider the question of the right of these several applicants to a license as if these facts constituted the only ground upon which they base their claims, other than the payment of the license fee, though some of the applicants base their claim upon facts which they insist show additional

qualifications entitling them to license. This law purports to cover the entire subject-matter of licensing practitioners of medicine and other modes of treating the sick or afflicted. It does not purport to amend any prior existing law, and expressly repeals all laws in any wise conflicting with its provisions. Its provisions, so far as necessary for us to notice them, are the following:

"Sec. 1.    The governor shall appoint a board of medical examiners to be known as the board of medical examiners of the state of Washington, . . ." Rem. & Bal. Code, § 8386.

"Sec. 4.    Any person who treats the sick or afflicted may register his or her diploma with the board of medical examiners, and receive a license to practice his or her respective mode of treatment, by paying a fee of ten dollars, which fee shall go towards defraying the expenses of said board: Provided, That he or she show evidence satisfactory to said board that he or she has been legally engaged in such practice prior to the passage of this act, in the state of Washington, and is a graduate of a legally incorporated school or college teaching the system or mode of treatment which the applicant intends or claims to follow, wherein the course comprises actual attendance and completion of two years of ten months each, or four terms of five months each, and the curriculum of study includes instruction in the following branches, to wit: Anatomy, physiology, chemistry and toxicology, bacteriology, gynecology and obstetrics, histology, hygiene, pathology and general diagnosis; or by having been in continuous practice in one locality in this state for the past two years; . . ." Rem. & Bal. Code, § 8389.

"Sec. 6.    In order to procure a certificate to practice medicine and surgery, the applicant for such certificate must file with said board at least two weeks prior to a regular meeting thereof, satisfactory testimonials of good moral character, and a diploma issued by some legally chartered medical school, the requirements of which shall have been at the time of granting such diploma in no particular less than those prescribed by the association of American medical colleges for that year, or satisfactory evidence of having possessed such diploma. . . ."    [This section refers to those licensed upon examination.]    Rem. & Bal. Code, § 8391.

"Sec. 20.    All persons receiving a certificate or license

under this chapter shall use no deception in the use of titles of his or her mode of treating the sick, but shall use only such titles as are designated by his or her diploma; or those not having a diploma shall use only such title as he or she holds license to practice. . . . " Rem. & Bal. Code, § 8406.

It is contended in behalf of the board of medical examiners that an applicant must, in addition to showing two years practice in one locality, have a diploma and register the same with the board before he will be entitled to a license under the provisions of the last clause above quoted from section 4; while it is contended in behalf of the applicants who do not have and never had diplomas, that a diploma is not a prerequisite to their right to licenses under that clause. Learned counsel for the board of medical examiners insist that this clause is a part of the proviso, and invoke the general rule to the effect that the office of a proviso is to limit rather than enlarge the meaning of the section of which it is a part, and quote from Black on Interpretation of Laws, p. 273 as follows:

"The natural and appropriate office of a proviso to a statute, or to a section thereof, is to restrain or qualify the provisions immediately preceding it. Hence it is a rule of construction that it will be confined to that which directly precedes it, or to the section to which it is appended, unless it clearly appears that the legislature intended it to have a wider scope."

This rule it is claimed results in limiting the meaning of the clause so that it has only the effect of prescribing an alternative qualification to that prescribed by the language immediately preceding it in the proviso. In other words, that it is only an alternative proviso appended to the first part of the section referring to the registering of a diploma. Conceding that this clause is in fact a part of the proviso, and looking to the provisions of section 4 unaided by other parts of the law, learned counsel's argument would seem to lead to the conclusion claimed; to wit; that a diploma is necessary in addition to the two years' practice in one locality, as it

seems to be necessary in addition to the prescribed qualifications following the word "provided" and preceding the two years' practice clause. But even confining ourselves to the provisions of section 4, this view is not entirely free from doubt. It will be noticed that the word "diploma," as used in the first part of the section, has there no defined meaning as to the kind of diploma required, or the kind, standard or grade of the school, society or institution issuing it. It is only when we notice the language immediately following the word "provided," and preceding the two years' practice clause in section 4, that the purpose of a diploma becomes evident. There we find it is evidently required for the purpose of showing graduation of the applicant from a school of a certain kind wherein certain branches of learning are taught. But when we come to the two years' practice clause with no requirement from the applicant to show evidence of his learning in any particular branch, it is not easy to see what the purpose is of having him furnish a diploma, especially when the first part of the section preceding the proviso, and the only part which could have any bearing upon the two years' practice clause, is utterly silent as to the nature of the diploma therein mentioned. We do not regard these observations as a conclusive answer to learned counsel's argument, but they suggest to our minds serious doubts as to the legislature having in mind the requiring of a diploma of any nature from those who had been in continuous practice in one locality in the state for two years.

Let us now notice some other provisions of the law. By section 20 it clearly appears that the legislature had in mind that at least some of those entitled to a license under this law should not be required to show their qualifications by diplomas, since it is there provided that the licensee "shall use only such titles as are designated by his or her diploma; or those not having a diploma shall use only such title as he or she shall hold license to practice." Learned counsel for the board of medical examiners contend that the words

"those not having a diploma" refer only to a licensee under section 6 upon examination, who is required to produce a diploma from a medical school of a certain standing "or satisfactory evidence of having possessed such diploma." We cannot agree with this contention. It seems to us that if a person ever had such a diploma and is basing his right to a license upon it, as he must under section 6, he will be governed in using his title as a practitioner by that which is designated in such diploma, whether he has physical possession of such diploma at that time or not. In other words, if he has or ever had a diploma and is granted a license upon it, then its designation of his title will govern whether it has any present physical existence or not. We think he is not one of those mentioned in section 20 as "not having a diploma." The only licensees mentioned in this law that these words could possibly refer to are those who are entitled to license by virtue of practice in one locality in the state for two years as provided in section 4. It is quite common in laws regulating professions and vocations and prescribing qualifications to be possessed by those entering upon them, to exempt those already engaged in them from showing any qualifications other than the fact that such persons are already so engaged or have been so engaged for a certain time. This seems to have been the policy pursued by our territorial and state legislatures. Code of 1881, § 2287; Laws of 1888, p. 87; Laws of 1890, p. 120; Laws of 1891, p. 372; Laws of 1901, p. 349 (Rem. & Bal. Code, § 7006); Laws of 1907, p. 228 (Rem. & Bal. Code, § 8426). And it has been held that such a provision is not such a discrimination as violates any constitutional right of those seeking to enter such professions or vocations. *State v. Sharpless*, 31 Wash. 191, 71 Pac. 737, 96 Am. St. 893; *Fox v. Territory*, 2 Wash. Ter. 297, 5 Pac. 603; 30 Cyc. 1560.

It must be conceded that the provisions of this law are somewhat involved, and that the question of its meaning is not free from doubt. However, we are of the opinion that one

who has been in continuous practice in one locality in this state for two years prior to the enactment of this law is not required to furnish further evidence of his qualifications by a diploma, and that such a person would be entitled to a license regardless of the fact of his ever having a diploma.

In some of these cases it appears that the applicants were engaged in the practice of medicine and surgery for the two years prior to the passage of this law without having a license required by the law as then existing. Laws of 1901, p. 50. This, it is contended, excludes such a person from the right to a license; because it is argued, that such a person was not legally engaged in practice, and therefore was not engaged in practice at all within the meaning of the two years' practice clause of section 4. In support of this view our attention is called to the case of *State ex rel. Smith v. Board of Dental Examiners*, 31 Wash. 492, 72 Pac. 110, where this court held that an amendment to the dentistry law providing, "This section shall not apply to persons engaged in the practice of dentistry at the time of the passage of this act who are *bona fide* citizens of the state of Washington," referred only to those who were previously *lawfully* so engaged under the same law. We do not think that decision is applicable here. We have noticed that the law here involved is a new and independent act, complete within itself, and repeals all former laws upon the subject. That part of section 4 following the word "provided" refers to two classes who may receive licenses. The first are persons who have been "*legally* engaged in such practice prior to the passage of this act." The second are those persons who have been in "continuous practice" in one locality for two years. It may be difficult to see a reason for the legislature exempting one class from the effect of their unlawful acts and not the other, but the use of the word "legally," in referring to one class and omitting it in referring to the other, clearly indicates the legislative intent to give the license privilege to the second class even though they have violated a previously existing law. The offense

21—59 WASH.

was in any event purely statutory, merely a misdemeanor, did not involve moral turpitude, and there is nothing so extraordinary in granting the license privilege by the legislature to those engaged in practice for two years, even though such persons did thereby violate the then existing license law, as to suggest that we should attribute to the word "practice" as here used without qualification, any other than its ordinary meaning.

What we have said thus far disposes of the several cases upon the merits. Some technical questions of practice are raised which we think are without merit and are not such that we feel called upon to discuss them. We are of the opinion that the judgments of the learned trial court should be affirmed in each case. It is so ordered.

RUDKIN, C. J., CROW, DUNBAR, and MOUNT, JJ., concur.