**CRESCENT EXPRESS LINES, Inc., v. UNITED STATES et al. (HUDSON TRANSIT LINES, Inc., et al., Interveners).**

District Court, S. D. New York.
March 6, 1943.

George H. Rosen, of New York City, for plaintiff.

Robert L. Pierce, of Washington, D. C., for the United States.

E. M. Reidy, of Washington, D. C., for the Interstate Commerce Commission.

James F. X. O'Brien, of Newark, N. J., for Hudson Transit Lines, Inc., intervening.

Henry P. Goldstein, of New York City, for Mountain Transit Corporation, intervening.

Before L. HAND, Circuit Judge, and CAFFEY and HULBERT, District Judges.

L. HAND, Circuit Judge.

This cause comes on before a court, convened under ,Sec. 47 of 28 U.S.C.A. for final hearing of an action brought under Sec. 41(28) of 28 U.S.C.A., to set aside an order of the Interstate Commerce Commission, and thus to reinstate its earlier order which the order appealed from modified. The plaintiff is a common carrier by motor, a corporation which succeeded to a partnership from which we need not distinguish it. On June 1, 1935, it was operating a fleet of six sedan motor cars, each capable of seating seven persons— six passengers and the driver—between New York City, (chiefly from the Borough of Bronx), and points in Ulster and Sullivan Counties, over a route, part of which was in New Jersey. On February 12, 1936, it filed an application with the Commission under Sec. 306(a) of 49 U.S.C.A. (the "Grandfather Clause" of the Motor Carrier Act of 1935), for a certificate authorizing it to continue this service, which on March 26, 1937, it supplemented by a more formal application, accompanied by supporting affidavits. A protest against the grant of such a certificate having been made, the case came on for hearing on November 30, 1937, at the New York district office of the Commission and proofs were taken. On May 7, 1938 the Commission entered an order, which it modified in unessential details by a second order entered on June 20, 1938, which is the order that the plaintiff wishes reinstated. This order awarded a certificate to the plaintiff which described the service to be rendered as being "over the regular route, between fixed termini, and to and from intermediate and off-route points" for four summer months "between New York, N. Y. and Woodbourne, N. Y.". After specifying the route in detail the certificate concluded: "Intermediate and off-route points within 20 miles of Woodbourne." Protests against this order were at once filed by a number of bus lines and the matter was referred back to the division for further investigation. Notice of a further hearing for December 1, 1938, was given, at which however no new evidence was taken, and which the plaintiff apparently did not attend. The Commission, having before it many applications involving the "Grandfather Clause", and being divided as to its meaning, withheld decision until September 2, 1941, when it superseded its certificate of June 20, 1938, and granted another in the following terms:

"The service to be rendered by applicant, as authorized by the order of which this is a part, in interstate or foreign commerce as a common carrier by motor vehicle of passengers and their baggage, in special operations, in non-scheduled door-to-door service, limited to the transportation of not more than six passengers in any one vehicle, but not including the driver thereof, and not including children under ten years of age who do not occupy a seat or seats, during the season extending from June 1 to October 1, inclusive, over irregular routes, is as specified below:

"Between New York, N. Y., on the one hand, and, on the other, points and places in Sullivan County, N. Y., and the Townships of Hardenberg, Denning, Rochester, Warwarsing, Gardiner, and Shawangunk, Ulster County, N. Y., traversing New Jersey for operating convenience only."

The plaintiff, which had been satisfied with the first certificate, objected to the second, and, after two petitions for rehearing had been denied (one addressed to the division which had issued the certificate, and the other to the whole Commission), brought this action on September 30, 1942. The amended complaint alleged that the second certificate was unlawful, because it should not have limited the plaintiff in five particulars: (1) To vehicles carrying only six passengers and the driver; (2) to "door-to-door service"; (3) to "irregular routes"; (4) to "non-scheduled" service; (5) to "special operations." In addition the complaint challenged the power of the Commission to modify the certificate of June 20, 1938, without taking further evidence, and holding another hearing. Answers having been filed, the cause came on for hearing upon the pleadings and the record of the proceedings before the Commission.

■ The case turns upon three sections of the Motor Carriers Act, Secs. 306, 307 and 308 of 49 U.S.C.A., which subject "common carriers"—as distinct from "contract carriers" (Sec. 309)—generally to the control and regulation of the Commission by requiring them to obtain certificates of "public convenience and necessi-

ty", similar to those required of common carriers by rail for extensions of their lines, Sec. 1(18), 49 U.S.C.A. The proviso to Sec. 308(a), upon which the plaintiff must rely for the scope which it claims for its certificate, applies to all certificates granted to "common carriers" under Sec. 307(a), whether under the "Grandfather Clause", or otherwise; and it will be clearer to consider the Commission's powers as a whole before taking up that clause itself. After giving general superintendence over the subject matter to the Commission by Sec. 306(a), Congress in Sec. 307(a) directed it to issue certificates, when these are "required by the present or future public convenience and necessity." The section concludes with a proviso which limits such certificates, in the case of passenger carriers, to "regular * * * routes, and between fixed termini, except as such carriers may be authorized to engage in special or charter operations." Section 308(a) defines what shall be the contents of such certificates: they must "specify the service to be rendered and the routes over which, the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which, and in case of operations not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate." (We interpret "special * * * operations," in the proviso to Sec. 307(a), as meaning the same thing as "operations not over specified routes," just quoted from Sec. 308(a); i. e., operations within a defined territory not upon regular routes, or between fixed termini.) Finally, Section 308(a) makes "the exercise of the privileges granted" by a certificate subject, both at its issue and at any later time, to "such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require."

■ Thus it appears, not only because the certificate is to "specify the service to be rendered" as well as the routes over which it shall be rendered, but also because that service is to be always subject to regulation in the interests of the public, that Sec. 308(a)—unless because of its proviso—leaves complete regulatory power in the Commission's hands. That proviso does, however, set a limit upon its power, and the result at bar depends upon what that is. It declares that none of the "terms, conditions, or limitations shall re-

strict the right of the carrier to add to his or its equipment and facilities * * * as the development of the business and the demands of the public shall require." The parties at bar appear to assume that this is more than merely a direction for the guidance of the Commission; and that, ex proprio vigore, it gives the carrier the privilege without recourse to the Commission of adding to his service as he may find it desirable to do so. That is indeed probably its true meaning; in any event we shall assume so for the purposes of this case, for in any event it must be read quantitatively. As we have already observed, the Commission must not only prescribe the route over which the carrier shall operate, but it must also "specify the service to be rendered." No one suggests that the proviso to Sec. 308(a) authorizes the carrier to change the prescribed route, and there is as little reason for saying that it justifies a change in the service to be rendered. Unless that feature of the certificate is to become a dead letter, and the Commission is to be stripped of all power except to fix routes, the carrier cannot have power substantially to modify the quality of his service, however free he may be to "add" to it in amount; and certainly nothing can more directly touch the quality of transportation than the cars in which passengers are carried. Indeed, limitation as to the quality of the service was inevitable in the public interest; a line of light small passenger cars—like those here at bar—may be desirable however numerous, over routes upon which a fleet of powerful, heavy, commodious, motor busses, capable of seating forty or fifty passengers, and weighing perhaps ten tons, would be wholly unsuitable.

■ The proviso in Sec. 306(a)—the "Grandfather Clause"—was apparently inserted to avoid the hardship which would result from forcing a carrier to justify his existing business in terms of public convenience. It was meant to accept the motor vehicle system as it was; it recognized as vested such rights as had grown up before Congress asserted any public interest in motor transportation; and consistently, the rights protected should be measured by past user. Strictly, it was therefore an anomaly to give carriers who secured certificates under the "Grandfather Clause", the privilege of indefinite quantitative expansion. The only reason for dispensing with the Commission's su-

pervision—i. e. the injustice involved in stopping a business which had grown up in reliance upon the failure of Congress to act—ceased with the protection of the business as it stood when regulation began; and possibly Congress did not realize that it was going as far as it did. Be that as it may, if the holders of such certificates have the same unlimited power to change the quality of their service as they have to add to its quantity, Congress, in an effort to prevent the unduly harsh impact of a new system, created a favored group of carriers, substantially free from all regulation over those routes on which they may have chanced to operate on June 1, 1935. So far at least, it is safe to say that Congress did not mean to go.

■ It follows from what we have just said that all those limitations of which the plaintiff complains were properly imposed upon its certificate, for all served to "specify the service to be rendered". There can be no debate about the first, which confines the service to cars holding only seven persons. The second, describing the business as a "door-to-door service", is not to be understood as preventing the plaintiff from picking up passengers either at No. 531 East 169th Street in the Bronx—said to be its New York "office"—or at any fixed place in the village of Woodbourne or elsewhere; and when so understood, the description is accurate, for it does do a "door-to-door" business. The Commission is certainly not limited to the exact words of the statute; it could not properly "specify" the service at all, if it were. Third: it was also proper to describe the route as "irregular". A "regular" route means one which has only "fixed termini", not one which always traverses the same roads for part of its route. The fact that the plaintiff picks up and sets down its passengers at places of their own choosing make its whole route "irregular". Its professed fear that its privilege of passing over the same roads between the Bronx and Wurtsboro may be forfeited is altogether fanciful. Fourth: the service was properly described as "non-scheduled", for such it is; if the plaintiff wishes to run on a schedule, it must apply to the Commission for a change. Fifth: the operation was "special" for that word—borrowed from the proviso in Sec. 307(a)—is used, as we have already indicated, in contrast with a "regular" route "between fixed termini".

■ Finally, we can see nothing improper in the procedure adopted by the Commission in changing its decision; it acted upon the same record and after notice to the plaintiff of a new hearing. True, the interval between the orders was long; but the whole subject was new and confused, and the Commission itself was divided in opinion. The plaintiff was deprived of no right, substantial or procedural, and indeed does not even now allege that any other evidence would have changed the result.

The amended complaint will therefore be dismissed: findings and a judgment are filed herewith.

*Complaint dismissed.*