## Commonwealth Air Transport, Inc., v. Stuart et al.

October 11, 1946.

Stephens L. Blakely for appellant.

G. S. Milam and M. J. Sternberg, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is from a judgment confirming the issuance by the Kentucky Aeronautics Commission to J. E. Stuart et al., partners doing business as the Blue Grass Air Lines, of certificates of convenience and necessity for the operation of intrastate air transport lines (1) between Paducah and Louisville, via Madisonville and Owensboro, and (2) between Bowling Green and Ashland, via Louisville and Lexington, KRS 183.540. After a hearing, in which a number of protestants and competitive applicants were heard, the Commission determined that the Blue Grass was entitled to the certificates under the "grandfather clause" of the Act of 1944 (Chapter 147), establishing and completing the system of state supervision, regulation and control of intrastate common carriers by air. KRS 183.010, 183.530 et seq. The provision is a part of KRS 183.540, dealing with the granting of authority to engage in the business and is as follows: "Provided, however, if it appears from the application

that the applicant is engaged as a common carrier, as defined in KRS 183.010(4), in the transportation of persons, property or mail, and is operating on regular schedules over the route or routes served on June 13, 1944, the commission shall forthwith issue to said applicant a certificate of public convenience and necessity authorizing said applicant to engage in transportation by air of persons or property or both, in intrastate commerce between all of the points in the state of Kentucky from which the applicant is operating on June 13, 1944.''

We quote also for ready reference the applicable part of the definition referred to, KRS 183.010(4), namely: ''When used in KRS 183.530 to 183.620: (a) The term 'common carrier' shall include all carriers for hire or compensation by air who operate, or seek to operate, over fixed routes or between fixed termini within the State of Kentucky.''

The grounds of the appellant's protest have been sifted to two, namely: (1) The appellees did not establish their eligibility under the ''grandfather clause'' and (2) that clause is or would be unconstitutional if made applicable to the state of facts proven.

We dispose first of the argument of the appellees that the appellant may not challenge the constitutionality of the provision because it is not affected by it and because it had invoked the benefits of the act itself. We differ with the appellees. The appellant had protested the granting of the certificates to the appellees as a prospective competitor. In substitution by assignment, it had applied to the Civil Aeronautics Board under the Federal Air Commerce Act of 1926, 49 U. S. C. A. secs. 171-184, for authority to engage in interstate air commerce covering parts of the same routes, and its rights would be injuriously affected if the appellees should succeed when under a valid law they ought not to do so.

It is to be observed that the challenge does not go to the constitutionality of the provision as a statutory rule but only as being violative of the equal protection provisions of the federal and state constitutions by discriminatory enforcement, i. e., if it be applied to the particular state of facts. This contention is within the principle thus stated in the leading case of Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 1073, 30 L. Ed. 220: ''Though

the law itself be fair on its face, and impartial in appliance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution."

Cf. Strand Amusement Co. v. Commonwealth, 241 Ky. 48, 43 S. W. 2d 321.

The argument with respect to this rule of constitutional construction is premised upon the contention that the appellees were not in fact engaged as a common carrier on June 13, 1944, and proved only a "token" engagement over these lines on that day, and did not transport a single passenger or article of property. We think the premise fails. In our opinion, there is no straining or stretching of the facts or of the law in order to bring the appellees within the letter and the spirit of the "grandfather clause." So the constitutional question goes out.

The Blue Grass had also sought a certificate to serve Covington and Danville, but the Commission found they had not established their right under the "grandfather clause" to do so. The vagueness of their proof with respect to those operations tends to confuse the evidence with respect to the lines for which certificates were given and which only are involved in this case.

We give a brief summary. The partnership began between two young brothers, into which their father later entered in order to afford better financing. As early as July, 1943, they had applied to the Federal Civil Aeronautics Authority for a license to engage in interstate commercial aviation in and out of their home city of Russellville. In January, 1944, they had purchased an airplane with the view of entering the business. In March and April of that year they made contracts for the use of airports and their facilities at Louisville, Paducah and Ashland and paid fees under them. On March 15 they established and published schedules or time tables in several newspapers and solicited patronage. On April 17 they made a contract to carry Louisville newspapers to Bowling Green and had regularly done so. Before June 13 they had acquired three small

planes, one capable of carrying two and the others three passengers each. They had employed two licensed pilots, and one of the partners is also a pilot. While the parties testified unequivocally that they had operated the lines regularly and continuously from March 15, 1944, they conceded that there had been interruptions in their schedules and they had often flown without passengers. It appears that they kept few if any substantial records before May, and the evidence is vague as to that prior period. But it is fairly well shown that they had afterwards established ticket offices or made arrangements for the sale of tickets at their stations and had kept adequate records. These records show that on some days no passengers were carried and probably that trips were omitted altogether. But they were holding themselves out for service. Their operations in and out of Ashland during this period were less regular than on the other lines. It is pretty well shown, however, that the omissions generally were when the plane had been delayed because of weather conditions and advice had been received by telephone to Lexington that there would be no passengers out of Ashland. The airport facilities in that city were hazardous in bad weather since the port was small in area, had sod runways and the visibility is often poor because of its proximity to the Ohio River. On June 12 and 13, the day set in the ''grandfather clause,'' the appellees operated a leased plane from Owensboro to Ashland via the cities on their two routes, and also via Danville and Covington. It appears that one of their planes was being ''checked'' and not available for operation. It so happened that not a single passenger was carried on that day. This is what the appellant says was only a token operation. If that were all in the record their claims would be substantial, but, as indicated, there is much more.

The term ''grandfather clause'' is the popular designation of provisions in the constitutions of some of the southern states that exempt from property and literacy restrictions on suffrage all descendants of men who voted before 1867. Webster's New International Dictionary. In initial regulatory statutes they satisfy ''the dictates of fairness by affording sanction for enterprises theretofore established.'' United States v. Maher, 307 U. S. 148, 59 S. Ct. 768, 771, 83 L. Ed. 1162. They serve to avoid hardships which would result from

forcing a carrier to justify his existing business in terms of public convenience, and recognize as vested such rights as had grown up before the enactment of the statute. Crescent Express Lines v. United States, D. C., 49 F. Supp. 92, affirmed 320 U. S. 401, 64 S. Ct. 167, 88 L. Ed. 127: Pioneering is not all geographic. The struggles of the early transportation systems in this country are matters of history. We do not forget that in the beginning of public transportation by motor car in our own generation ordinary passenger automobiles were often used and the services were frequently interrupted by the conditions of the cars and of the highways. Those who pioneer the way in a new enterprise have the right to have these "grandfather clauses" liberally construed to preserve the positions which they have struggled to obtain. United States v. Carolina Freight Carriers Corporation, 315 U. S. 475, 62 S. Ct. 722, 86 L. Ed. 971. Of interest also are monographs 36 Yale Law Journal 163, 184; 28 Michigan Law Review 107, 117; 41 Michigan Law Review 162; 1 Journal of Air Law 76.

We think the appellees clearly manifested their right when consideration is given to the fact that they were pioneering and blazing a new trail, or rather a new system of transportation, under the handicaps of war by a method that was in a stage of development. It was experimental, for previous to that day people generally had not become accustomed to that mode of travel, especially for relatively short distances. It was a new business locally. It may be of significance that the term "common carrier" as used in the "grandfather clause" also includes carriers who "seek to operate." A fairly consistent pattern of operations was shown. It can not be said that the services were incidental, sporadic or infrequent. Temporary interruptions or limited facilities do not avail to neutralize or nullify what would otherwise surely be regarded as bona fide operations as a common carrier on regular schedules on June 13, 1944. Between that day and the time of the hearing by the Aeronautics Commission (November, 1944) the applicant, Blue Grass Air Lines, had increased their equipment, were seeking to acquire additional planes from the war surplus, and otherwise had proven their ability and purpose to furnish adequate and efficient service. No question was raised as to their compliance with other requisite conditions.

The federal law, 49 U. S. C. A. sec. 481 (e) provides for the issuance of a certificate of public convenience and necessity to any air carrier which could show that for a certain period before the effective date of the act it had "continuously operated as such (except as to interruptions of service over which the applicant or its predecessor in interest had no control)" unless the service was shown to be inadequate and inefficient. The federal Board has given a liberal construction and application of this provision in several decisions and these carry some persuasion if citation of authority be desired. See Marquette Lines, Inc., Docket No. 7—401(e)-1; and Inland Airlines, Inc., Docket No. 26-401(e)-1, Vol. 1, Reports of Civil Aeronautics Authority.

The Legislature entrusted to the Commission which it created the power to determine whether an applicant shall have a certificate authorizing it to engage in the public transportation of passengers and goods by air. It limited the courts on review to determine only if a factual decision of the Commission is supported by substantial evidence. We are of the opinion that the decision of this case by the Commission is so supported, and that the judgment should be, and it is, affirmed.