[No. 37073.    Department Two.    July 9, 1964.]

CITY SANITARY SERVICE, INC. *et al., Appellants,* v. WASHING-
TON UTILITIES AND TRANSPORTATION COMMISSION
*et al., Respondents.*\*

\*Reported in 393 P. (2d) 952.

*Preston, Thorgrimson, Horowitz, Starin & Ellis* (*Charles Horowitz* and *Edward Starin*, of counsel), for appellants City Sanitary Service, Inc. *et al.*

*George Kargianis*, for appellant R. & C. Refuse Company, Inc.

*The Attorney General* and *James R. Cunningham, Assistant*, for respondent Washington Utilities and Transportation Commission.

*Aiken, St. Louis & Steere*, by *Paul W. Steere* and *Charles E. Siljeg*, for respondent Industrial Transport Co., Inc.

HAMILTON, J.—By application filed June 1, 1961, and amended October 18, 1961, respondent Industrial Transport Co., Inc., sought of respondent Washington Utilities and Transportation Commission a certificate of public convenience and necessity for the operation of a garbage and refuse collection service within an area covering substantially all of the city of Seattle. The application was predicated upon Laws of 1961, chapter 295, paragraph 6 of § 5, p. 2388, RCW 81.77.040, which reads, *inter alia*:

"Any garbage and refuse collection company which upon the effective date of this act [July 1, 1961] is operating under authority of a common carrier or contract carrier permit issued under the provisions of chapter 81.80 RCW shall be granted a certificate of necessity without hearing upon compliance with the provisions of this chapter. . . ."

Appellants, City Sanitary Service, Inc., and Seattle Disposal Company, a partnership, as holders of certificates to operate as garbage and refuse collection companies in the Seattle area, protested the application essentially upon the grounds that Industrial Transport Co., Inc., did not qualify as a garbage and refuse collection company within the contemplation of Laws of 1961, chapter 295, or the portion quoted above.

Following a hearing, the issuance of a proposed order, and the filing of exceptions, the commission entered the following ultimate finding, conclusion, and order:

"1. Prior to and upon the effective date of Chapter 295, Laws of 1961, applicant, Industrial Transport Co., Inc., oper-

ated as a garbage and refuse collection company within that portion of the Seattle local cartage area which is defined in Exhibit 1 and is therefore entitled to a certificate of public convenience and necessity to transport garbage and refuse within the subject area as provided in Paragraph 6, Section 5, Chapter 295, Laws of 1961.

"ORDER

"WHEREFORE, IT IS ORDERED That application (GA-69) of Industrial Transport Co., Inc., for a certificate of public convenience and necessity to furnish garbage and refuse collection service in the following described territory be, and the same is hereby, granted:

"GARBAGE AND REFUSE COLLECTION SERVICE (excluding residential service) in the City of Seattle within the following described area:   . . ."

Appellants petitioned for and obtained review by the Superior Court of Thurston County pursuant to RCW 81-.77.070, 80.04.170, and 34.04.130. The superior court found the evidence produced at the hearing supported the commission's finding, concluded that the commission correctly applied the law, and affirmed the commission's order. This appeal followed, under the provisions of RCW 34.04.140.

Prefatory to discussion of appellants' assignments of error, three observations should be marked.

■ (1) The Washington Utilities and Transportation Commission is an administrative agency, and as such is a fact-finding tribunal. *Herrett Trucking Co. v. Washington Public Ser. Comm.,* 58 Wn. (2d) 542, 364 P. (2d) 505; *State ex rel. Arrow Transp. Co. v. Washington Util. & Transp. Comm.,* 60 Wn. (2d) 825, 376 P. (2d) 433. Its findings of fact are by statute (RCW 81.04.430) made prima facie correct, and the burden is upon the one attacking a finding, conclusion or decision to show that it is unlawful, unsupported by material and substantial evidence, or is arbitrary or capricious. RCW 34.04.130(6); *Herrett Trucking Co. v. Washington Public Ser. Comm., supra; Herrett Trucking Co. v. Washington Public Ser. Comm.,* 61 Wn. (2d) 234, 377 P. (2d) 871. See also *State ex rel. Dawes v. Washington State Highway Comm.,* 63 Wn. (2d) 34, 385 P. (2d) 376. Courts should not and will not interfere with or sub-

stitute their judgment for a decision of the commission when it has properly acted within the sphere of its purpose, expertise, and competence. *Herrett Trucking Co. v. Washington Public Ser. Comm.*, 61 Wn. (2d) 234, 377 P. (2d) 871.

(2) Prior to the effective date (July 1, 1961) of Laws of 1961, chapter 295, carriers of garbage and refuse were governed and regulated by the commission upon the basis of its general regulatory powers over common and contract carriers. Generally speaking, such carriers were authorized to operate under authority of a common or contract carrier permit after qualifying therefor in accordance with RCW 81.80 and the commission's rules and regulations. Laws of 1961, chapter 295, codified as RCW 81.77, removed carriers of garbage and refuse from the common or contract carrier permit law, placed them under the supervision and regulation of the commission, and prescribed standards for the issuance of certificates of public convenience and necessity. To preserve the rights of those operating on July 1, 1961, as garbage and refuse collectors under authority of a common or contract carrier permit, the legislature enacted Laws of 1961, chapter 295, paragraph 6 of § 5, *supra,* colloquially referred to as a "grandfather clause."

(3) Respondent Industrial Transport Co., Inc., has, since approximately 1953, engaged in the business of collecting, transporting, and dumping, by appropriate equipment, industrial refuse, trade waste, and commingled garbage. This service has been carried on in the Seattle area under the sanction of a regularly issued common carrier permit, containing local cartage authority within the city of Seattle, and pursuant to certain tariffs filed with the commission. On July 1, 1961, Industrial was servicing 95 commercial accounts scattered throughout the Seattle area, deriving therefrom substantially more than 50 per cent of its gross operating revenues.

On this appeal, appellants make 13 assignments of error directed to the commission's order and the superior court's affirmance thereof. All assignments essentially revolve about the interpretation and application of Laws of 1961,

chapter 295, §§ 2 and 5, RCW 81.77.010 and 81.77.040, the pertinent paragraphs of which read:

"(7) 'Garbage and refuse collection company' means every person or his lessees, receivers, or trustees, owning, controlling, operating or managing vehicles used in the business of transporting garbage and refuse for collection and/or disposal for compensation, except septic tank pumpers, over any public highway in this state whether as a 'common carrier' thereof or as a 'contract carrier' thereof." Laws of 1961, chapter 295, § 2, RCW 81.77.010 (7).

"No garbage and refuse collection company shall hereafter operate for the hauling of garbage and refuse for compensation without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation.

"Issuance of the certificate of necessity shall be determined upon, but not limited to, the following factors: The present service and the cost thereof for the contemplated area to be served; an estimate of the cost of the facilities to be utilized in the plant for garbage and refuse collection and disposal, sworn to before a notary public; a statement of the assets on hand of the person, firm, association or corporation which will be expanded on the purported plant for garbage and refuse collection and disposal, sworn to before a notary public; a statement of prior experience, if any, in such field by the petitioner, sworn to before a notary public; and sentiment in the community contemplated to be served as to the necessity for such a service.

"When an applicant requests a certificate to operate in a territory already served by a certificate holder under this chapter, the commission may, after hearing, issue the certificate only if the existing garbage and refuse collection company or companies serving the territory will not provide service to the satisfaction of the commission.

"  .   .   .

"Any garbage and refuse collection company which upon the effective date of this act is operating under authority of a common carrier or contract carrier permit issued under the provisions of chapter 81.80 RCW shall be granted a certificate of necessity without hearing upon compliance with the provisions of this chapter. Such garbage and refuse collection company which has paid the plate fee and gross weight fees required by chapter 81.80 RCW for the year 1961 shall not be required to pay additional like fees under

the provisions of this chapter for the remainder of such year." Laws of 1961, chapter 295, § 5, RCW 81.77.040.

In support of a number of their assignments of error, appellants first contend that an applicant for "grandfather" rights under the last quoted paragraph must establish, and the commission must find, those factors listed in the third and fourth quoted paragraphs, before a certificate of public convenience and necessity may issue. In short, appellants assert that respondent Industrial Transport Co., Inc., in making application as an existing and operating garbage and refuse carrier on July 1, 1961, must qualify and justify a continuation of its operation upon the same basis as any future applicant for a certificate of public convenience and necessity.

We cannot agree with this contention.

The basic purpose of the so-called "grandfather clauses" in regulatory legislation is succinctly defined by the Minnesota Supreme Court in *State ex rel. Krausmann v. Streeter,* 226 Minn. 458, 463, 33 N. W. (2d) 56, 4 A.L.R. (2d) 662, as follows:

". . . The purpose of an exception or grandfather clause is to exempt from the statutory regulations imposed for the first time on a trade or profession those members thereof who are then engaged in the newly regulated field on the theory that they who have acceptably followed such profession or trade for a period of years, or who are engaged therein on a certain date, may be presumed to have the qualifications which subsequent entrants to the field must demonstrate by examination. . . ."

The underlying fairness of such provisions is capsulized by the Kentucky Supreme Court in *Commonwealth Air Transport, Inc. v. Stuart,* 303 Ky. 69, 73, 196 S. W. (2d) 866:

". . . In initial regulatory statutes they satisfy 'the dictates of fairness by affording sanction for enterprises theretofore established.' United States v. Maher, 307 U. S. 148, 59 S. Ct. 768, 771, 83 L. Ed. 1162. They serve to avoid hardships which would result from forcing a carrier to justify his existing business in terms of public convenience, and recognize as vested·such rights as had grown up before

the enactment of the statute. Crescent Express Lines v. United States, D. C., 49 F. Supp. 92, affirmed 320 U. S. 401, 64 S. Ct. 167, 88 L. Ed. 127. . . ."

■ And, this court has long recognized and accepted the validity of such clauses. In *In re Christensen*, 59 Wash. 314, 320, 109 Pac. 1040, we stated:

". . . It is quite common in laws regulating professions and vocations and prescribing qualifications to be possessed by those entering upon them, to exempt those already engaged in them from showing any qualifications other than the fact that such persons are already so engaged or have been so engaged for a certain time. This seems to have been the policy pursued by our territorial and state legislatures. [Citing statutes.] And it has been held that such a provision is not such a discrimination as violates any constitutional right of those seeking to enter such professions or vocations. *State v. Sharpless*, 31 Wash. 191, 71 Pac. 737, 96 Am. St. 893; *Fox v. Territory*, 2 Wash. Ter. 297, 5 Pac. 603; 30 Cyc. 1560."

■ With the purpose, fairness, and validity of a "grandfather clause" in mind, a reading of Laws of 1961, chapter 295 (RCW 81.77), and particularly the above quoted portions thereof, together with RCW 81.80.070, pertaining to the qualifications for a common or contract carrier permit, amply demonstrates that the legislature intended to and did recognize a distinction between those engaged in the business of garbage and refuse collection under a common or contract carrier permit upon July 1, 1961, and those who might thereafter seek to qualify for and enter the field. Recognizing such a distinction, it is equally clear that the legislature sought to preserve those operating rights existing upon the critical date and to prescribe a procedure whereby an operating garbage and refuse collector could obtain a certificate of public convenience and necessity without being required to justify the continuation of his business in terms of ability and public convenience.

We conclude, therefore, that an applicant seeking to qualify for a certificate under the last paragraph of Laws of 1961, chapter 295, § 5, RCW 81.77.040, need only establish, and the commission need only find, that (1) upon July 1,

1961, such applicant was operating as a "garbage and refuse collection company" as defined in the statute, and (2) such applicant was then operating under and pursuant to the authority of a common or contract carrier permit issued under the provisions of RCW 81.80. When the commission finds such facts, and the applicant complies with the pertinent provisions of the statute relative to fees and insurance, the issuance of a certificate becomes mandatory.

Appellants next contend, in support of their remaining assignments of error, that respondent Industrial Transport Co., Inc., is not entitled to "grandfather" rights, either to the extent granted or at all, because Industrial was not in fact or in law a qualified garbage and refuse collector on or before July 1, 1961. In support of this contention, appellants assert that Industrial (1) was hauling under a general freight permit only, (2) did not hold itself out as being primarily engaged in garbage and refuse collection, (3) transported only incidental amounts of garbage, (4) did not have a permit as required by Seattle Ordinance No. 86373, and (5) did not file tariffs with the commission covering garbage.

Each of appellants' allegations were, in one form or another, presented to and considered by the commission. Prefatory to, and incorporated by reference in, its ultimate finding, conclusion, and order, the commission determined appellants' allegations as follows:

" . . . The applicant had been engaged in the hauling of garbage, refuse and trade waste for various accounts in the City of Seattle under its general freight authority since 1953. It is conceded by all parties that they were authorized to haul garbage and refuse under general freight authority in the City of Seattle.

"The Commission finds little merit in the protestants' statement that applicant was not engaged in garbage and refuse collection service merely because it did not haul from any restaurants or food serving establishments. Garbage and refuse collection service from any establishment is all that is necessary.

" . . .

"The Commission cannot agree with the protestants' theory that the applicant's operations were not bonafide

because it failed to receive a permit from the City Engineer and the Director of Public Health. City Ordinance No. 86373, section 4 thereof states in part: 'It shall be unlawful for anyone . . . to haul garbage or putrescible trade waste through the streets of the City of Seattle *except when permitted by the city engineer and the director of public health.*' (emphasis supplied) There is nothing in this ordinance which requires a formal written permit. In the ordinance in question there are no stated procedures for obtaining permit, permit fees, standards for issuance, appeal procedures or penalties. However, there is uncontroverted testimony of record that the Seattle city engineer's office was cognizant of the applicant's operations and had never impeded or hindered these operations.

"In Order M. V. G. No. 117 the Commission found that the technical violations of the law, rules and regulations governing motor freight carriers which the applicant committed i.e. hauling garbage under a tariff denoting trade waste, were completely unintentional. The Commission is of the opinion that this violation is not sufficient to warrant a denial of otherwise justifiable 'grandfather' rights. See *Alton Railroad Co. vs. U. S.*, 315 U. S. 15, 86 L. Ed. 586.

"In conclusion, the determination of whether or not a carrier's operation is bonafide is a question of fact. This Commission has determined in the instant proceeding that the applicant's operations on or before July 1, 1961, in fact constitutes a bonafide garbage and refuse collection service. . . ."

We have carefully reviewed the record in the light of the commission's function as an administrative agency and the appellants' allegations. We are satisfied, as was the superior court, that the evidence presented amply supports the ultimate finding, that the commission correctly interpreted and applied the law, and that the commission properly acted within the sphere of its discretion.

The order of the commission and the judgment of the superior court are affirmed.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.

September 16, 1964. Petition for rehearing denied.