CRESCENT EXPRESS LINES, INC. *v.* UNITED STATES ET AL.

No. 65.  Argued November 19, 1943.—Decided December 6, 1943.

*Mr. George H. Rosen* for appellant.

*Mr. E. M. Reidy,* with whom *Solicitor General Fahy* and *Messrs. Walter J. Cummings, Jr.* and *Daniel W. Knowlton* were on the brief, for the Interstate Commerce Commission, appellee.  The cause was submitted by *Mr. Henry P. Goldstein* for the Mountain Transit Corporation, and by *Mr. James F. X. O'Brien* for the Hudson Transit Lines, Inc., appellees.

MR. JUSTICE REED delivered the opinion of the Court.

This appeal brings here for review a judgment of a district court[1] upholding an order of the Interstate Commerce Commission, specifying limitations in a certificate proposed to be issued to appellant as a common carrier.

The order bears the limitations upon its face, as follows:

"The service to be rendered by applicant, as authorized by the order of which this is a part, in interstate or foreign commerce as a common carrier by motor vehicle of passengers and their baggage, in special operations, in non-scheduled door-to-door service, limited to the transportation of not more than six passengers in any one vehicle, but not including the driver thereof, and not including children under ten years of age who do not occupy a seat or seats, during the season extending from June 1 to October 1, inclusive, over irregular routes,"
between New York, N. Y., and points in Sullivan and Ulster Counties, New York.

Following the enactment of the Motor Carrier Act of 1935, 49 Stat. 543, 49 U. S. C. §§ 301 *et seq.,* the appellant's predecessor, a partnership, made timely application for a certificate of public convenience and necessity under the grandfather clause of the Act, 49 U. S. C. § 306 (a).

As appears from the application and the evidence, the appellant's operations began in 1928 when Herman Trevax purchased a seven-passenger sedan and began carrying passengers to summer resorts in the mountains of New York State. Between 1930 and 1933, three others purchased cars, joined Trevax in this business and opened an office in New York. All this was prior to the critical date of June 1, 1935, fixed by § 306 (a) to determine the

---

[1] 28 U. S. C. §§ 47, 47a.

eligibility of applicants for certificates because of their former (grandfather) operation.

The partners advertised "7 Passengers Cars Leaving Daily to All Parts of the Mountains," "From Your Home to Your Hotel." An affidavit stated that the partners would "transport people to hotels located in all roads and by-roads." The owners of several resort hotels stated that the applicant had supplied cars for carrying guests between their hotels and New York City. Former passengers described the convenience of the service and from their descriptions of the trips, it appears that the routes followed were irregular and taken to fit the needs of each passenger. The firm owned no buses of any kind.

On June 20, 1938, the Commission issued an order that it would, on compliance with conditions not here pertinent, grant a certificate authorizing Crescent to operate

"as a common carrier by motor vehicle of passengers and their baggage, over the regular route, between fixed termini, and to and from intermediate and off-route points, during the season extending from the 1st of June to the 1st of October, inclusive,"

between New York City and named towns in Sullivan and Ulster Counties, New York, by way of New Jersey.

Protests were filed by several competing carriers, who considered the compliance order too broad. On September 14, 1938, the parties were notified that the objections had been deemed sufficient to warrant referring the case back to the field force for further investigation. An informal hearing, which the applicant did not attend, was held on December 1, 1938.

The Commission then deferred determination of the applicant's rights until the decision of a number of test cases involving carriers performing a similar service. See Sullivan County Highway Line Application, 21 M. C. C. 717, reconsidered, 30 M. C. C. 133; Irving Nudelman Ap-

plication, 22 M. C. C. 275, reconsidered, 28 M. C. C. 91. In the meantime, the partners sold their business to the present appellant, which was substituted before the Commission by order of October 31, 1940. On September 2, 1941, the second order, providing for a more limited certificate, quoted at the beginning of this opinion, was issued.

(1) Appellant contends that the changes to which it objects in the last order as compared with the earlier were made without proper hearing or evidence. This argument proceeds upon the assumption that the earlier conclusions, as embodied in the 1938 order, endow appellant with something akin to a right to receive ultimately a certificate embodying the terms of the order.[2] However, under § 306 the Commission was directed to issue the certificates to applicants under the grandfather clause without further proof of convenience or necessity and without further proceedings. Its routine practice was to refer the application to its field force for investigation.[3] The applicant appeared before this examiner prior to the first order of the Commission. The compliance order was made upon the application, the supporting affidavits and questionnaire. The mass of applications forced this summary procedure.[4] The compliance order gave opportunity to the applicant or other parties in interest to protest its conclusions. The order remains

---

[2] These preliminary orders are spoken of as compliance orders. Such a descriptive word is applicable because the orders direct the issue of a certificate in accordance with the terms of the compliance order, if no objection is filed and if the applicant complies with the statutory and regulatory requirements of security for protection of the public, rates, fares, charges and tariffs. 49 U. S. C. §§ 315–317.

[3] 51st Annual Report of the Interstate Commerce Commission, pp. 70–72.

[4] 51st Annual Report of the Interstate Commerce Commission, pp. 67, 68, 71; 55th Annual Report of the Interstate Commerce Commission, p. 110. See *Gregg Cartage Co.* v. *United States*, 316 U. S. 74, 84.

under the control of the Commission. § 321 (b). This application was treated in the foregoing manner.

Nothing inimical to the applicant on the protests of its competitors developed from the hearing of December 1, 1938. Applicant protested in writing the order of September 2, 1941, filed a brief in support of its protest and upon the refusal of Division 5 on March 17, 1942, to allow the protest, renewed it before the entire Commission where it was again denied July 13, 1942. At no time has appellant offered to present additional evidence of operations prior to June 1, 1935. It seems plain to us that appellant has been afforded ample opportunity to present its application with all supporting data. In view of these facts, we do not find it necessary to resolve a question as to whether or not appellant had actual notice of the meeting of December 1, 1938.

(2) A further contention of appellant is that the record "does not support the Commission in restricting the appellant to door-to-door service over irregular routes in non-scheduled operations," which were described as special operations. As the district court's interpretation of the order, that "door-to-door service" allowed the appellant to transport passengers from their office or station in the city as well as from the passengers' residences to the mountains and vice versa, is not challenged, that provision requires no further examination. Evidently from the advertisement quoted on p. 403, *supra,* both of these types of business were sought.

The objection of appellant to "irregular routes" appears to be that only special or charter operations entitle a motor carrier to a certificate for irregular routes. § 307. Therefore if appellant's operations are scheduled operations between fixed termini, as appellant also contends, the order ought to require a regular route. However, we think the evidence is clear that prior to the critical date, June 1, 1935, the operations of appellant were special and non-sched-

uled. Consequently the insertion of the privilege for irregular routes was correct.

In answer to the inquiry as to whether special or charter operations were conducted prior to June 1, 1935, appellant answered, "no special operations." [5] However, the record shows a number of instances where passengers made individual arrangements for their transportation to and from the mountains. No schedule of arrival or departure appears in the record. Instead of publishing arrivals and departures, routes, stops, et cetera, the advertisements referred to daily trips and asked prospective customers to arrange for reservations. There was convincing evidence that applicant's service prior to June 1, 1935, was special and non-scheduled.

The evidence also is plain that the appellant did not operate between fixed termini. A map was filed with the application showing not a single destination in the mountains but numerous ones, which are described by appellant in its application as follows:

"Applicant obtains its traffic in the Boroughs of Manhattan and Bronx, New York, and transports said traffic to the Counties of Sullivan and Ulster, in the State of New York. On return trips the applicant obtains its traffic in and about Woodbourne, New York, more specifically within a radius of twenty (20) miles from Woodbourne, New York, and transports such traffic to the five boroughs of New York City."

(3) Finally, appellant urges that it is beyond the power of the Commission to limit its operations to "transportation of not more than six passengers in any one vehicle."

---

[5] The Commission construes "charter" to refer to one contractor taking over all the vehicle for a trip or trips and "special" to transportation services on week-end, holidays or other special occasions when the carrier assembles the passengers and sells individual tickets. Re Fordham Bus Corp., 29 M. C. C. 293, 297, 41 F. Supp. 712.

The freedom is claimed to use buses or other multiple passenger type of conveyance.

Section 208 of the Act, 49 Stat. 543, 552, 49 U. S. C. § 308, provides, with reference to grandfather clause carriers,

"That no terms, conditions, or limitations shall restrict the right of the carrier to add to his or its equipment and facilities over the routes, between the termini, or within the territory specified in the certificate, as the development of the business and the demands of the public shall require." [6]

The scope of the Commission's authority under this section depends upon the meaning given to the word, "business." The appellant argues that it would be engaged in the same business if, in lieu of using seven-passenger sedans, it undertook to haul larger numbers of passengers in buses. But the special advantage to the public inherent in the use of small vehicles operating as occasion demands from door-to-door rather than between terminals, sets off the appellant's business from the service provided by regular lines operating heavier equipment. Irving Nudelman Application, 28 M. C. C. 91, 95–6. The limitation to six passengers in one load is less restrictive than limitation to a particular type of vehicle

---

[6] The bill as drafted by the Federal Coordinator of Transportation did not contain the proviso. S. Doc. No. 152, 73d Cong., 2d Sess., pp. 47 and 357. The addition was explained by Senator Wheeler, the Chairman of the Interstate Commerce Committee, as follows: "Section 208 (a), page 26, as amended, permits the Commission to attach to all certificates, whether granted under the grandfather clause or otherwise, reasonable terms, conditions, and limitations. In order to meet criticisms that the effect of these provisions would be to check the natural growth of operations if every increase in facilities required authorization by the Commission, the committee has amended section 208 (a) . . ." 79 Cong. Rec. 5654.

since it allows the carrier to employ sedans, open cars, station wagons, or any other suitable motor vehicle. 28 M. C. C. at 96. This allows flexibility in equipment while continuing the same business. 22 M. C. C. 285. The line between six-passenger and larger scale operation must be drawn somewhere, and the Commission has fixed it where the appellant conducted its business on June 1, 1935. The Crescent partnership gave some indication that it appreciated these special differences when in 1938 it proposed to change its name to Crescent Cadillac Service, "for the sake of a better business name," thus emphasizing the commercial significance of the sedan-type vehicle. It appears from the application that Crescent owned no buses; it operated nothing but sedans. To authorize the appellant to change to the business of carrying passengers by bus would alter the position in the transportation system which it occupied on June 1, 1935. *Noble* v. *United States*, 319 U. S. 88.[7]

If the holder of a grandfather certificate for this distinctive door-to-door service could develop his operations so that they would be substantially those of a bus line, the ability of the Commission to carry out its duties of regulation in the public interest would be seriously impaired. Since § 308 requires the Commission to specify the service to be rendered, this could not be done without power also to specify the general type of vehicle to be used. We

---

[7] The *Noble* case was a contract carrier application under 49 U. S. C. § 309. Under subsection (b) the Commission was required to specify in the permit the "business of the contract carrier covered thereby."

We held that it was proper to limit the permit so that only shippers who "operate food canneries or meat packing businesses," in particular localities, might be served. This limitation corresponded to the type of trade previously enjoyed by the carrier. The carrier contended for a limitation only as to commodities. The proviso in § 309 (b), applicable in the *Noble* case, covers substantially the same ground as the proviso in § 308 dealt with in the present opinion.

agree with the Commission that the proviso is a prohibition against a limitation on the addition of more vehicles of the authorized type, not a prohibition of the specification of the type. See Irving Nudelman Application, 28 M. C. C. 91.[8]

We are of the view that the power of the Commission to limit the certificate as it proposes to do is in accord with the purposes of the Motor Carrier Act. When Congress provided for certificates to cover all carriers which were already in operation, it did not throw open the motor transportation system to more destructive competition than that already existing. The right to certificates was limited to those then in bona fide operation "over the route or routes or within the territory for which application is made." 49 U. S. C. § 306.

The statute, we have said, contemplated "substantial parity" between future and prior operations. *Alton R. Co.* v. *United States,* 315 U. S. 15, 22. "As the Act is remedial and to be construed liberally, the proviso defining exemptions is to be read in harmony with the purpose of the measure and held to extend only to carriers plainly within its terms." *McDonald* v. *Thompson,* 305 U. S. 263, 266; *Gregg Cartage Co.* v. *United States,* 316 U. S. 74, 83. Consequently we held in *United States* v. *Maher,* 307 U. S. 148, that operations over irregular routes did not provide the requisite continuity to support an application for regular service between fixed termini, even when the highway between the fixed termini had been occasionally used for part of the distance in the irregular route operations.

---

[8] Numerous instances of limitation of type are given in the Nudelman opinion. The rule of the Nudelman case has been applied in Rubin and Greenfield Application, 33 M. C. C. 383, and Greenberg Application, 33 M. C. C. 725. See also Davidson Transfer & Storage Co. Application, 32 M. C. C. 777.

When the Commission requires the applicant under the grandfather clause to limit its future operations to the type of equipment and service previously offered, it acts within its power and in accord with the purpose of Congress to maintain motor transportation facilities appropriate to the needs of the public. S. Rep. No. 482, 74th Cong., 1st Sess. If there is a need for a different type of service for this transportation, applications may be filed under § 307.

*Affirmed.*