## AKIN v. UNITED STATES et al.
### Civil Action No. 1488.

District Court, W. D. Louisiana,
Shreveport Division.
Aug. 9, 1945.

392

### Findings of Fact.

1. The plaintiff was not, as a matter of fact, on June 1, 1935, bona fidely engaged in common carrier operations by motor truck, within the meaning of that term as defined by the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq.

2. Neither has he shown such operation since June 1, 1935.

### Conclusions of Law.

1. The burden was on plaintiff to prove by a fair preponderance of the evidence that he was, independently of contract operations, engaged in interstate transportation by motor truck of general commodities to have entitled him to a certificate of convenience and necessity under the "grandfather clause" of Sec. 206(a) of Part II of the Interstate Commerce Act. 49 U.S.C.A. § 306(a).

2. The Commission correctly excluded documentary and other evidence of *contract* carrier operations in the determination of plaintiff's status as a *common* carrier by motor vehicle on the decisive date of June 1, 1935.

3. There was substantial basis to support the conclusion of the Commission that plaintiff had failed to discharge the burden of proving that he was entitled to a certificate of convenience and necessity under the "grandfather clause" of the Act. Chicago, St. Paul, Minneapolis and Omaha Ry. Co. v. U. S., 1944, 322 U.S. 1–4, 64 S.Ct. 842, 88 L.Ed. 1093; Gregg Cartage & Storage Co. v. U. S., 316 U.S. 74, 62 S.Ct. 932, 86 L.Ed. 1283; Rochester Tel. Corporation v. U. S., 1939, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147.

Culbertson, Morgan, Christopher & Bailey, of Fort Worth, Tex., and H. B. Barrett, of Shreveport, La., for plaintiff.

M. E. Lafargue, U. S. Atty., of Shreveport, La., and Wendell Berge, Edward Dumbauld, David O. Mathews, Allen Crenshaw, and Daniel W. Knowlton, all of Washington, D. C., for defendants.

Before LEE, Circuit Judge, and DAWKINS, and CAILLOUET, District Judges.

DAWKINS, District Judge.

Plaintiff seeks the annulment of an order of the Interstate Commerce Commission denying him a certificate of convenience and necessity for operation as a common carrier by motor truck over certain high-

ways between points in Texas and Louisiana. He claims that right under the "grandfather clause" of Section 306(a), 49 U.S.C.A., Section 206(a) of Part II of the Interstate Commerce Act.

The grounds of attack on the order are as follows:

1. That the Commission considered a part only of the evidence offered to show that, before the effective date of the Motor Carriers Act of 1935 (now Part II of the Interstate Commerce Statute), to-wit, June 1, 1935, he was and has since been bona fidely engaged in interstate commerce as a common carrier by motor truck.

2. That it failed to determine whether he was a contract or common carrier within the meaning of said Act, but carved his operations up "into unrelated parts in a misconstruction of the statute and an erroneous application of statutory standards in determining the application"; and,

3. That there is no substantial evidence to support the Commission's order denying the application.

Copies of the opinion and order are attached and made part of the bill of complaint. It was found that the plaintiff commenced trucking operations in 1932, and, was, in 1934, registered under a "code of fair competition" when his real operations began; that on October 20, 1934, the Railroad Commission of Texas issued to plaintiff contract carrier permit No. 11,186, authorizing operation, which restricted it (1) to the transportation of packing house products that required refrigeration, for Swift and Co. from Fort Worth, Texas, to the Louisiana state line through Dallas, Terrell and Marshall, Texas, over Texas Highway 114 and U. S. Highway 80, and (2) the use of equipment owned by him but not exceeding two trucks; and that no authority was required in Louisiana for interstate operations until 1938, at which time plaintiff complied with the law of that state. Further, that since 1934, plaintiff has been engaged in this service as a contract carrier for Swift and Co., covering some 250 articles, the bulk of the transportation being from Fort Worth and Dallas, Texas to New Orleans, Louisiana; that in "grandfather clause" application No. MC—18267, he was, on October 12, 1938, granted by the Commission a contract carrier permit to transport packing house products "over irregular routes (1) from Fort Worth and Dallas to Donaldsonville, Shreveport, Alexandria and Baton Rouge, Louisiana, and (2) between Fort Worth and Dallas on the one hand and on the other, from New Orleans." It was also found that while plaintiff had carried packing house products for other companies, his principal operations were for Swift and Co.; that he had obtained three additional permits extending this contract carrier service to other points and has continued to use all of said permits.

The application in question in this case was filed February 12, 1936, was designated as No. MC 52459, and sought either a certificate of convenience and necessity or a permit under Sections 306(a) and 309(a) of the Act. The first hearing on this application was held on June 22, 1940, before joint Board No. 32, at which time plaintiff sought to amend his application so as to ask for a certificate of convenience and necessity as a common carrier only. This was rejected by the Board, but on further hearing, before Division Five of the Commission, on December 12, 1942, that ruling was reversed and an order entered allowing the amendment and authorizing the issuance of a certificate of convenience and necessity, upon condition that, within sixty days, the applicant should notify the Commission of "his election to receive such certificate as a common carrier", dismiss the application for and surrender the contract carrier permits. Within the delay allowed, plaintiff elected to accept the common carrier's certificate. In the meantime, however, certain other common carriers by motor truck and railroad had intervened and opposed the granting of the certificate and, on March 13, 1943, the case was reopened. Plaintiff was directed to file "an amended application setting forth fully and completely his claim for the right to continue operations as a common carrier by motor vehicle of general commodities between Fort Worth and New Orleans over an irregular route." On May 3d following the amendment was filed, in which certain changes were made in the routes covered by the first report.

Further hearings were had before the Joint Board on June 24 and 25, and November 22 and 23, 1943. At the June hearings, the Board ordered the applicant to separate his documentary evidence "so as to clearly show what operations were conducted as a common carrier under specific contracts with certain shippers and what operations were performed as a common carrier for the general public", and that these documents or exhibits be placed with the Commission's supervisor at New Orleans "for

inspection by protestants prior to the continued hearing in November 1943." In scheduling the documentary evidence, applicant numbered those applying to his common carrier operations as exhibits No. 26 and those covering his contract business as No. 27. Several of the protestants appeared at the hearings and attacked the authenticity of the documentary evidence and the credibility of the applicant and his witnesses. The Board found against the applicant and recommended the previous report "granting this application should be reversed." Plaintiff failed to file "timely" exceptions, but his "late-filed" exceptions were accepted as a brief and protestants were permitted to file a reply. Protestants attacked the application for the common carrier's certificate on the ground that it was "Merely a duplicate copy of the original application filed in No. MC—18267", in which the applicant simply struck out the number and inserted a higher one and it should not be treated as an application under the "grandfather clause," but as a new application. This contention was overruled by the Commission and the application considered on its merits.

The Commission considered all the evidence offered in support of the common carrier status but refused to include, as a part thereof, the documents and other evidence covering the contract carrier portions. It required a separation because, as it held, and had the power to hold under the statute that, it was not to the best interest of the public that plaintiff should be permitted to conduct both types of operations, that is, as contract and common carrier at the same time, because of the possibility of discrimination in rates, one of the principal evils the Act was intended to remedy. It was shown, rather conclusively, as the Commission found, that by far the major portion of plaintiff's operations, prior to the important date of June 1, 1935, were as a contract carrier by motor for Swift and Co., and that such items as were carried on a common carrier basis were transported on the same trips and in the same vehicles as the common carrier goods.

Taking up the grounds of attack upon the order enumerated under the three headings in the beginning of this opinion, we find as follows:

1. As we understand it, the basis for the contention that the Commission considered only a part of the relevant evidence on the question of common carrier status, is that it refused to include the documents on exhibit 27 covering contract carrier operations; that it failed to give any weight to oral testimony as to shipments in which there were no supporting documents, and rejected evidence of witnesses on the testimony of others offered by protestants, which was insufficient to constitute impeachment.

The law itself, in giving to operators the benefits of the "grandfather clause," requires that the applicant, prior to June 1, 1935, should have been engaged "in bona fide operations as a common carrier * * *." Sec. 306(a). This, it would seem, necessarily committed to the Commission the question of fact as to whether any applicant had been operating in good faith and with the genuine intention of holding himself out to the general public as willing to carry, to the extent of his ability, with the equipment in hand, the goods of any and all who might wish to ship by his line; or, whether his main business was that of transporting by special and private contracts the goods of particular shippers, carrying only as a sort of sideline or fill in, when space was available the property of the general public. It would be very easy for one whose principal business was that of contract carrier, to take advantage of the fact that he had occasionally carried general commodities of small consequence, to claim a common carrier right, especially where the applicant, because of the passage of this Act, with its limitations, had found it possible to assign or lease the route over a period of years to others, who were willing to pay therefor rentals which ran into hundreds or even thousands of dollars per month. As a matter of fact, the plaintiff has, while his application was pending before the Commission and with its approval, leased or assigned his common carrier rights to another for a period of four years, beginning at $350 per month and increasing to $750 per month for the fourth year, with optional renewal for three years additional at $950 per month, subject, of course, to the granting of the present application. For this reason, we agree with the Commission, that in the determination of whether the applicant was, at the crucial date, acting as a common carrier, should be determined by those operations alone, and exclusive of such as were conducted as a contract carrier. Crescent Express Lines v. United States, 1943, 320 U.S. 401, 410, 64 S.Ct. 167, 88 L.Ed. 127. We are not unmindful

of the difficulties confronting one in making such proof, after the lapse of many years; but it must not be forgotten, that, in attempting to secure the benefits of the "grandfather clause" all operators were put on notice by the very terms of the statute itself, passed in 1935, that they would have to be able to show bona fide or substantial operations as a common carrier when they filed their applications before the deadline in February 1936. McDonald v. Thompson, 1938, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164; Alton Railroad Co. v. United States, 1942, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586. It would further seem that common prudence would have suggested that they collect and preserve the documents and other proofs necessary for this purpose when they were comparatively fresh and available, and not wait until the expiration of a long period of some five or six years which intervened between that time and the hearings before the Commission in this case. In view of the course pursued by this plaintiff in obtaining permits as a contract carrier, both from the State Railroad Commission and the Interstate Commerce Commission, and his operating thereunder for several years, the decision to claim a certificate has the appearance of an afterthought.

When the Commission first held, in 1942, that the applicant was entitled to a certificate, there was little opposition, but when that decision was made, the whole issue of fact was thrown open, and after full investigation, it was decided that the weight of the evidence was against the bona fides of the claim that plaintiff had really intended to operate or hold himself out as a common carrier. Like a jury in a case at law, the Commission is the judge of the credibility of the witnesses and the weight of the evidence, and we can not disturb its findings of fact, if supported by substantial proof. It has analyzed in detail both the documentary and oral evidence, giving its reasons for acceptance or rejection, and we can not say there is no substantial basis for its rulings and findings, but on the contrary, believe they are supported by the record.

2. As to the second ground for the attack·upon the Commission's orders, that it failed to determine whether the applicant was a contract or common carrier, we think it sufficient to quote the following from the opinion itself, to-wit:

"Discussion and conclusions.—Applicant takes the position that only a few of the shipments allegedly transported prior to June 1, 1935, have been controverted and that these few shipments may be disregarded as of no probative value without affecting the grant of the application. He proceeds on the assumption that the remaining shipments are entitled to full faith and credit because they have not been disproved. This assumption is invalid, however, since the burden of proof rests upon applicant to establish the authenticity of the documentary evidence upon which he relies. Protestants discredited much of this evidence and applicant admitted that he could not separate the supporting documents to show the originals from the copies. In view of the doubt cast upon the authenticity of the documentary evidence, this evidence was given little weight by the joint board which conducted the hearing and observed the demeanor of the witnesses. *We agree with the joint board that applicant has failed to establish that he was engaged in 'bona fide' operations as a common carrier on and prior to June 1, 1935.*

"Even if we assume that applicant's documentary evidence is authentic, his showing for the period immediately following the statutory date remains deficient. In the 13 month period from June 1, 1935, to July 1, 1936, only five common carrier shipments are shown on Exhibit No. 26 whereas 75 such shipments are shown in the 8 month period from October 1, 1934, to June 1, 1935. Such a large decline in the number of shipments transported subsequent to the statutory date indicates a virtual cessation of applicant's claimed common carrier operations during this critical period. These few shipments, obviously are insufficient proof of a good-faith service over the 539 mile route between Fort Worth, Dallas, Shreveport, and New Orleans as these four cities, respectively, have populations of approximately 178,000, 295,-000, 98,000, and 495,000. *No explanation is offered for this lack of substantiality and continuity of service and hence, this defect alone would warrant denial of the application even if the evidence for the prior period was unquestioned.*

"Furthermore, the manner in which applicant's common carrier operations were conducted tends to negative his claim of a good-faith service. These operations were so small in comparison with applicant's principal service as·a contract carrier of·

packing-house products as to warrant the conclusion that they were merely a "side line", particularly since many of the shipments shown for the prior period consisted of commodities purchased by his drivers under personal arrangements with the shippers. Although applicant claims a "holding out" to serve the general public, he did not advertise his service or have a business telephone or terminal in his own name where ordinary shippers could obtain his service. On the contrary, most of his common carrier shipments were transported for only two or three shippers in 1937, 1938, and 1939, the only years in which any appreciable number of such shipments was transported since the statutory date.

"*Upon consideration of the manner in which applicant's common carrier operations were conducted and the aforementioned defects in his documentary evidence for the periods immediately prior and subsequent to June 1, 1935, we do not believe that he was engaged in "bona fide" operations as a common carrier during these critical periods. Our authorization of such operations in the prior report was based on applicant's evidence, standing alone, but this evidence has been discredited by protestants as discussed herein. We conclude, therefore, that our prior findings should be reversed and that the application should be denied.*

"*Findings.—Upon further hearing, we find that applicant has failed to establish the right to a certificate under the "grandfather" clause of section 206(a) of the Interstate Commerce Act, authorizing operation, in interstate or foreign commerce, as a common carrier by motor vehicle, of general commodities between the points claimed in the amended application, and that such application should be denied.*"

(Italics are by the writer of this opinion.)

 The only question at issue was as to whether the applicant should be granted a certificate of convenience and necessity as a common carrier by motor vehicle. It already had and is said to be using the permits as a contract carrier. What has been said with respect to No. 1 above, indicates, we think, that the Commission found the applicant's proof as to operations both before and since the crucial date of June 1, 1935, were not such as to establish that he was bona fidely engaged in the business of a common carrier.

As the Commission held, the burden was on him to show that he was so engaged, and not that the opposing evidence should establish the negative fact that he was not. We cannot say that the Commission was wrong in its conclusion and since we can disturb its rulings on questions of fact only where there is no substantial proof to sustain them, it follows that we must find against the plaintiff on this score, also.

3. As already indicated, the evidence offered by plaintiff was not sufficient to sustain his contention of bona fide common carrier operations over periods designated in the statute. Hence the question is not one of lack of substantial proof that he was not so engaged, but a failure to discharge the burden which the law placed upon him.

Proper decree should be prepared and presented.