**ESTATE of E. L. NORTHCUTT,
Deceased, et al., Plaintiffs,**

v.

**UNITED STATES of America et al.,
Defendants.**

**Civ. A. No. 5530.**

United States District Court
D. New Mexico.

Sept. 23, 1966.

Don Wilson, Albuquerque, N. M., W. J. Torrington, Los Angeles, Cal., for plaintiffs.

John Quinn, U. S. Atty., Albuquerque, N. M., for defendants.

O. Russell Jones, Myles E. Flint, Santa Fe, N. M., for intervenors.

Robert W. Ginnane, Gen. Counsel, and Robert S. Burk, Washington, D. C., for Interstate Commerce Commission.

Before SETH, Circuit Judge, PAYNE, Chief Judge, District Court, and BRATTON, District Judge.

## OPINION AND ORDER

### PER CURIAM.

This is a suit to set aside, annul, cancel, and enjoin enforcement of the consolidated report and orders of the defendant Interstate Commerce Commission published as Estate of E. L. Northcutt, Deceased—Petition Proceeding, 94 M.C.C. 585 (1963). The Commission's consolidated report and orders, among them a cease and desist order which plaintiffs seek to enjoin, arose from a hearing on May 3, 4, 5, 1961, upon a consolidated record in Interstate Commerce Commission Proceedings, MC–34227, MC–C–3101, MC–34227 (Sub. No. 3), and MC–34227 (Sub. No. 4).

Jurisdiction of this three-judge court is invoked under the provisions of Title 28 U.S.C. §§ 1336, 1398, 2284 and 2321 to 2325, as amended.

This is a motor carrier case in which the extent of authority contained in an Interstate Commerce Commission contract carrier permit arising from a grandfather application under 49 U.S.C. § 309(a) is questioned many years after the initial application was made. Here, E. L. Northcutt, father of the plaintiffs Northcutt, made his grandfather application on January 25, 1936, and thirty years later, this court is called upon to review the authority granted to the original applicant.

A detailed statement of the facts in this case is contained in the Report and Orders of the Commission, published at 94 M.C.C. 585 (1963). The facts pertinent to the question before this court are as follows: On January 25, 1936, E. L. Northcutt filed his application with the Commission for a grandfather contract carrier's permit. It stated that he carried "special commodities," which were listed as "fruits and vegetables" and that his transport was not for hire to the general public, but that he was a contract carrier for Safeway Stores. A copy of a New Mexico Corporation Commission permit supplied with the application stated that it was restricted to the transportation of goods owned exclusively by

Safeway Stores. Later reports submitted to the Commission by Northcutt and by representatives of Safeway Stores stated that Northcutt had been employed as a contract carrier for Safeway Stores only. No route information was supplied with the grandfather application, but a supplemental report submitted to the Commission by Northcutt, November 23, 1938, stated that he carried "commodities as are usually dealt in by wholesale and retail grocery stores and food business houses, and equipment, materials, and supplies used in the conduct of such business," between Albuquerque and:

Los Angeles, Brawley, and El Centro, in California,

Phoenix and Duncan, in Arizona,

Brownsville and El Paso, in Texas, and

Denver, Alamosa, and Del Norte, in Colorado.

All hauls were inbound to Safeway's main distribution warehouse at Albuquerque, except for backhauls to Gallup, New Mexico, and Phoenix.

Competing carriers protested Northcutt's application, but no hearings were held. The Commission issued its Compliance Order to Northcutt on January 24, 1939. In pertinent part the order granted the authority to carry:

"Such merchandise as is dealt in by wholesale, retail, and chain grocery and food business houses, and in connection therewith, equipment, materials, and supplies used in the conduct of such business, * * *"

from the points listed above, to Albuquerque, and from Albuquerque to Gallup and Phoenix.

Northcutt filed a supplemental petition in 1940 in which he stated that it was clear from the record that he had been operating as a contract carrier for Safeway Stores only, and that under the authority of the 1939 Compliance Order, as issued, he contemplated a continuance of his operations for Safeway Stores only, but that he would reserve the right to operate as a contract carrier for another employer in case Safeway Stores should cancel their contract. Replies to this sup-

plemental petition were filed by competing carriers, accepting the terms of the petition and recommending that the Commission substitute the supplemental petition for the 1939 Compliance Order. The Commission did issue an amended Compliance Order to Northcutt, on September 12, 1941, which adopted the exact commodity descriptions and routes Northcutt had shown in his August 13, 1940, Supplemental Petition, but which also carried a *Keystone* restriction. E. L. Northcutt's Permit No. MC–34227, issued on August 27, 1943, restricted the carrier to contracts, "* * * with persons * * * who operate retail chain grocery stores, the business of which is the sale of food." The commodity and route descriptions were the same as had been set out in the Commission's 1941 Amended Compliance Order.

There is nothing in the record to show that E. L. Northcutt protested the restricted authority granted in the permit at the time the permit was issued or within a reasonable time thereafter. In fact, the first and only hearing that was requested by E. L. Northcutt or his heirs was filed in a petition proceeding of May 21, 1959. As previously indicated, the question of the scope of E. L. Northcutt's authority under Permit No. MC–34227 was heard during the consolidated hearing in 1961.

In 1946, Safeway Stores moved their distribution warehouse to El Paso. E. L. Northcutt then moved his operations to El Paso to serve his Safeway contract. E. L. Northcutt died in 1950. His son, Kenneth Northcutt, was appointed administrator of the estate, and he requested the Commission to cancel Permit No. MC–34227, stating that it was unlikely that operations under the permit would be resumed. The Commission cancelled the permit in July 1954, Kenneth Northcutt having died in the meantime. The surviving heirs of E. L. Northcutt thereafter asked the Commission to reinstate the permit, and it was so reinstated.

In February 1958, the Commission questioned several shipper contracts A. C. Northcutt had obtained, as being outside the authority of Permit No. MC–34227. One of these contracts involved the movement of beer from Los Angeles to Albuquerque; another for the movement of commodities dealt in by paint stores from Los Angeles to Albuquerque; and another covered materials for ceramics, from Los Angeles to Albuquerque. In April 1958, Regional Counsel for the Commission advised that a petition be filed for conversion from contract carrier to common carrier status.

In September 1958, Gerald Northcutt filed a petition styled "Petition for Modification, Clarification And/Or Conversion to Certificate as Common Carrier," which was denied as being improper procedurally. The Commission then instituted proceeding No. MC–C–3101, to investigate A. C. Northcutt's operations under Permit No. MC–34227 and consider the possible revocation of the permit. In October 1960, A. C. Northcutt filed Application No. MC–34227 (Sub. No. 3), requesting extension of contract carrier routes—from El Paso to points in New Mexico, and from points in the Pacific Northwest, California, Arizona, Colorado, and New Mexico, to El Paso. Application No. MC–34227 (Sub. No. 4), seeking modification of the routes from Los Angeles and Phoenix to Albuquerque, from regular to irregular, was filed November 23, 1960. Protests were filed by common carriers serving the affected areas.

On November 25, 1960, Gerald Northcutt filed his petition to reopen the prior petition proceedings regarding the clarification, modification, or conversion of Permit No. MC–34227.

On May 3, 4, 5, 1961, at Santa Fe, all four proceedings, No. MC–34227, No. MC–C–3101, No. MC–34227 (Sub. No. 3), and No. MC–34227 (Sub. No. 4) were heard on a consolidated record. The Northcutts were represented, as was the Commission in No. MC–C–3101, and the protestants in No. MC–34227 (Sub. No. 3) and No. MC–34227 (Sub. No. 4); the latter also protested generally to the petition proceedings in No. MC–34227. No. MC–C–3101 was submitted on a stipulated set of facts.

In No. MC–34227 (petition proceedings), the Northcutts put on several witnesses, including A. C. Northcutt, who testified to the effect that E. L. Northcutt's operations prior to July 1, 1935 (the cut-off date for proof of bona fide grandfather operations) were not limited to one shipper (Safeway Stores), and involved the movement of commodities of a general nature, not limited to the "grocery" items set out in Permit No. MC–34227. The substance of their testimony is set out in detail in the Commission's Report and Orders, 94 M.C.C. at 592–93, and will not be repeated here. No documentary evidence regarding E. L. Northcutt's grandfather operations was offered at the consolidated hearing.

Plaintiffs contend that the grandfather permit, as issued, was unduly restrictive and unclear in its meaning. They contend that prior to July 1, 1935, E. L. Northcutt's operations were broad enough to support the temporary authority granted in the Commission's 1939 Compliance Order; that Permit No. MC–34227, issued to E. L. Northcutt on August 27, 1943, should have incorporated the broad authority contained in the 1939 Compliance Order; that operations resumed by the Northcutt heirs in 1957–58 were within the scope of authority applied for by E. L. Northcutt and approved in the 1939 Compliance Order, and that therefore the Commission's Report and Order in No. MC–34227 (petition proceedings), its denial of applications No. MC–34227 (Sub. No. 3) (extension of routes), and No. MC–34227 (Sub. No. 4) (modification of routes from regular to irregular), and its cease and desist order entered in No. MC–C–3101 (investigation and revocation proceedings) are unlawful and unenforceable. Plaintiffs seek the annulment of the Commission's orders denying their Sub. No. 3 and Sub. No. 4 applications, a permanent injunction against the enforcement of the cease and desist order in No. MC–C–3101, and the issuance of a permit in conformance with the broad authority contained in the Commission's 1939 Compliance Order.

On the other hand, the Commission argues that Permit No. MC–34227, issued August 27, 1943, sets up the controlling authority. It is the Commission's position that E. L. Northcutt neither applied for nor proved the authority contained in the 1939 Compliance Order; that the Compliance Order was merely temporary operating authority, subject to change prior to its ripening into a permit; and that the 1943 permit granted exactly the authority applied for and proved by E. L. Northcutt. For this reason, the Commission argues that the operations resumed by the Northcutt heirs in 1957–58 were, in part, outside the authority granted by the 1943 permit and therefore lawfully subject to its cease and desist order.

In No. MC–34227 (petition proceedings) the Commission found that the facts and circumstances relative to the prior petition (September 1958 Petition for Clarification, Modification And/Or Conversion) were repeated in the Petition to Reopen, considered in the instant proceeding, and that no new facts or arguments were presented in the instant petition nor at the consolidated hearing in Santa Fe which would warrant reopening or reconsideration of the prior petition. The Commission denied the Petition to Reopen in No. MC–34227. In No. MC–C–3101, the Commission considered the stipulated set of facts submitted by the parties, concluded that certain of the contracts entered into by A. C. Northcutt in 1957–58 were outside the scope of authority granted by No. MC–34227, and entered its cease and desist order. The Commission denied the plaintiffs' Sub. No. 3 and Sub. No. 4 applications on the ground that the applicants failed to establish that the route extensions and modifications proposed would be consistent with the public interest and the national transportation policy.

Pending the outcome of this case, this court granted plaintiffs' request for a temporary restraining order against the enforcement of the Commission's cease and desist order.

We are mindful of the general rules of judicial review of the Commis-

sion's determinations—that the record must reveal that the Commission's orders have a rational basis and are supported by substantial evidence, Gilbertville Trucking Co., Inc. v. United States, 371 U.S. 115, 83 S.Ct. 217, 9 L.Ed.2d 177 (1962); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934); that the courts will not disturb the administrative ruling when the only question is one of the weight of the evidence, United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942); and that the courts will not overturn the Commission's construction of its permits unless clearly erroneous, Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958); Denver Chicago Transport Co. v. United States, 183 F. Supp. 785 (D.Colo.1960), aff'd 364 U.S. 627, 81 S.Ct. 356, 5 L.Ed.2d 363; Scott Truck Line, Inc. v. United States, 163 F.Supp. 118 (D.Colo.1958). After a review of the administrative record submitted in this case, it is the opinion of this court that the consolidated Report and Orders of the Commission, published at 94 M.C.C. 585 (1963), should not be set aside.

■ Plaintiffs had the burden of establishing the existence of facts necessary to support their claim that Permit No. MC–34227 should have granted the broad authority contained in the Commission's 1939 Compliance Order. Alton R. R. Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586 (1942); Watson Bros. Transp. Co. v. United States, 59 F.Supp. 762 (D.Neb.1945). In the face of the 1943 grandfather permit based upon documentary proof of the scope of E. L. Northcutt's grandfather operations, the record before us, as the Commission found, was insufficient to sustain plaintiffs' burden. Zuzich Truck Line, Inc. v. United States, 224 F.Supp. 457 (D.Kan.1963); C & E Trucking Corp., 88 M.C.C. 391, 395 (1961); Newsom Trucking Co., 71 M.C.C. 663, 668

(1957). After such a passage of time and the use by the applicant of the permit issued without record objection to its limitations, the evidence of a miscarriage of justice must indeed be clear and convincing. We conclude that Permit No. MC–34227 clearly and correctly stated the authority for which E. L. Northcutt applied and for which his grandfather operations qualified him. Actually, the permit granted authority to conform to the description of operations set out in Northcutt's own supplemental petition, dated August 13, 1940. There is no longer a question over the validity of *Keystone* restrictions in contract carrier permits. Noble v. United States, 319 U.S. 88, 63 S.Ct. 950, 87 L.Ed. 1277 (1943). Nor is there any question that the Commission may modify a Compliance Order prior to the time a permit is issued. Crescent Express Lines, Inc. v. United States, 320 U.S. 401, 64 S.Ct. 167, 88 L.Ed. 127 (1943).

■ In view of the foregoing conclusion that Permit No. MC–34227 was clear and correct, we must necessarily conclude that those contracts entered into by A. C. Northcutt when he resumed operations in 1957–58, admitted by stipulation in No. MC–C–3101 to be contracts with shippers who do not operate retail chain grocery stores the business of which is the sale of food, are subject to the Commission's cease and desist order, issued in No. MC–C–3101.

■ Finally, we conclude that there was substantial evidence in the record to support the Commission's denial of the Sub. No. 3 and Sub. No. 4 applications on the ground that ·no sufficient showing had been made that the proposed operations would be consistent with the public interest and the national transportation policy. There was ample evidence in the record to show that the public interest and national transportation policy in the areas in question were adequately satisfied by the carriers already serving those areas. See the test set out in 49 U.S.C. § 309(b); cf. I. C. C. v. J–T Transport Co., 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147 (1961).

It is therefore ordered and adjudged that the relief sought by the plaintiffs be denied, and their complaint and cause be dismissed.