FLEET TRANSPORT COMPANY, INC., et al., Appellants-Plaintiffs,

v.

TENNESSEE PUBLIC SERVICE COMMISSION et al., Appellees-Defendants.

Supreme Court of Tennessee.

Dec. 28, 1976.

R. Dale Woodall, Memphis, for appellants-plaintiffs.

Eugene W. Ward, Public Service Commission, A. O. Buck, Roland M. Lowell, William

---

2. *See, e. g.,* Stone and Williams, Tennessee Workmen's Compensation, § 37 (1957).

C. Koch, Jr., Asst. Atty. Gen., Nashville, for appellees-defendants; Brooks McLemore, Atty. Gen., Nashville, of counsel.

## OPINION

HARBISON, Justice.

This action was brought to challenge the constitutionality of Chapter 349 of the Public Acts of 1975. This statute amended that portion of T.C.A. § 65–1503(e) which placed under the Public Service Commission certain commercial haulers of petroleum products and other hazardous materials. The amendment purported to benefit carriers which had been engaged in bona fide operations as of May 17, 1971. As construed by the Chancellor, the amendment was a belated "grandfather clause" to a 1971 statute which had for the first time placed such carriers under the jurisdiction of the Commission.

The Chancellor sustained the validity of the 1975 statute, after eliding therefrom one clause dealing with disposition of revenue, which was deemed to be broader than the caption and violative of Article II, Section 17 of the state constitution. No issue concerning that clause is presented on this appeal.

By Chapter 119 of the Public Acts of 1933, now codified as T.C.A. §§ 65–1501 et seq., the Public Service Commission was given broad authority to supervise and regulate motor carriers within the state. There were a number of exemptions contained in the original statute, however, and in the intervening years other exemptions have been added, and the original exemptions have been modified or amended.

Originally exempted were vehicles used exclusively for transporting property solely within a single city, town or suburb thereof, not over or along definite, fixed, or advertised routes.

By Chapter 86 of the Public Acts of 1961 an additional exemption was provided to any motor vehicle used in the transportation of petroleum products "when the owner, lessee or bailee of the vehicle is legally and regularly engaged in the business of selling or distributing such petroleum products transported on such vehicle."

The constitutionality of that exemption was sustained in the case of *Gasoline Transport, Inc. v. Crozier*, 210 Tenn. 96, 355 S.W.2d 98 (1962), against a contention that it constituted unreasonable and invidious class legislation, in violation of Article XI, Section 8, of the Tennessee Constitution. The 1961 act was codified as T.C.A. § 65–1503(i) and by subsequent amendments has been modified and narrowed in scope.

By Chapter 219 of the Public Acts of 1971, the original exemption dealing with haulers in commercial zones of municipalities, T.C.A. § 65–1503(e), was also modified. Deleted from the exemption were motor vehicles engaged in transporting petroleum products or other hazardous materials, in bulk, in tank trucks or trailers, for hire, unless such vehicles were otherwise exempt under the 1961 statute above referred to, T.C.A. § 65–1503(i).

The 1971 amendment became effective on May 18, 1971. It required carriers transporting petroleum and other hazardous materials within cities to obtain a certificate of convenience and necessity or a contract hauler's permit from the Public Service Commission, and otherwise to comply with the requirements of statutes and regulations governing motor carriers.

Appellants in the present case are three motor carriers who applied for and received certificates of convenience and necessity from the Public Service Commission, prior to adoption of the 1971 statute. The action was instituted against two other carriers which had unsuccessfully applied for such certificates under the 1971 statute,[1] but which were claiming "grandfather" rights under the 1975 statute here involved. Also made parties defendant were the Public Service Commission and the State Attorney General.

1. See *Lindsey v. Fowler*, 516 S.W.2d 88 (Tenn. 1974) as to a prior application of one of the appellees.

Insofar as here pertinent, the 1975 statute purported to grant an exemption from the requirements of the 1971 act to all vehicles owned or operated by carriers engaged in providing municipal transport services of petroleum and other hazardous products as of May 17, 1971, the day before the effective date of the 1971 act.[2] The 1975 statute went further, however, and directed the Commission to issue "grandfather certificates" of convenience and necessity or contract haulers' permits to all carriers furnishing such transport services provided they were "in bona fide operations on May 17, 1971 . . . ." Applications for such grandfather certificates were required to be made within a specified time, and there is no question but that appellees in the present case properly applied for such certificates.

Appellants insisted in the trial court and urge on appeal that the 1975 statute is internally inconsistent and is void as being vague and indefinite; they further insist that it is invidious class legislation in violation of Article XI, Section 8, of the State Constitution. With regard to the latter contention, it is insisted that the legislative history reveals that the 1975 act was passed for the specific benefit of appellee Beryl J. Lindsey, d/b/a Lindsey Transports and Lindsey Transport Service, and that the act affects only his operations and that of one other motor carrier, appellee Arkansas Transport Company, Inc., both of the appellees conducting their operations in the City of Memphis, Tennessee.

No witnesses testified in the trial court, and the case was disposed of upon the basis of legal arguments and exhibits filed with the Chancellor. These exhibits deal with the legislative history of T.C.A. § 65–1503 and various amendments thereto, and contain an opinion of the state attorney general as to the constitutionality of the 1975 act in question. They also contain certified copies of various orders of the Public Service Commission dealing with applications for certificates of convenience and necessity under the 1971 statute. There is no showing, by testimony or otherwise, how many carriers were actually affected by the 1971 statute or the 1975 amendment.[3]

Appellants are correct in their assertion that the 1975 statute is unclear. It first purported to grant an outright exemption to all vehicles owned by carriers engaged as of May 17, 1971 in providing the transport services here involved. The amendment then went further and undertook to direct the issuance of grandfather certificates of convenience and necessity or contract haulers' permits to all carriers engaged in bona fide operations on May 17, 1971, provided application was made within a specified time.

Faced with this ambiguity in the statute, the Chancellor concluded, correctly in our opinion, that the entire statutory scheme must be examined and the intent of the legislature determined.

In the case of *Southern Railway Company v. Fowler,* 497 S.W.2d 891, 896 (Tenn. 1973), this Court stated:

> "In construing an Act, it is the duty of a court to save rather than destroy it, and to reconcile different provisions, giving them a consistent meaning rather than otherwise."

Adopting this approach, the Chancellor concluded that the predominant intention of the legislature was to enact a grandfather clause, allowing carriers operating on May 17, 1971 to continue to operate under "grandfather certificates" of public convenience and necessity, but subject to future regulation by the Public Service Commission as to safety rules and regulations, inspection of vehicles, etc.

Upon this basis, the Chancellor concluded that the 1975 act was not internally inconsistent or vague. He further concluded

---

**2.** For the text of the 1975 act as codified, *see* Appendix.

**3.** According to the exhibits filed, four carriers in fact applied for certificates under the 1971 statute, two applications being granted and two denied. Whether there were other carriers which should have made application does not appear from the record.

that it was not contradictory to other statutes and public service commission regulations governing motor carriers, inasmuch as "grandfathered" carriers were simply to be issued a certificate without the burden of proving public convenience and necessity, but were to be subject to all other motor carrier requirements.

We agree with and affirm the Chancellor's analysis of the 1975 statute, and also with his conclusion that the selected date, May 17, 1971, was not chosen arbitrarily or without a rational basis, since that was the day immediately preceding the effective date of the 1971 statute, bringing carriers such as those here involved under the jurisdiction of the Commission for the first time.

The principal contention of appellants is that the 1975 statute constitutes invidious class legislation, or special legislation for the benefit of a particular individual or individuals. In this regard, appellants concede that had the grandfather clause contained in the 1975 statute been included in the original 1971 statute, there would be no constitutional problem.

It is pointed out by appellees that the language contained in the 1975 statute, requiring the issuance of a certificate of public convenience and necessity or a contract hauler's permit without requiring proof of convenience and necessity and without further proceedings, is almost identical to language contained in the Federal Motor Carrier Act of 1935, 49 U.S.C.A. § 306(a).

The language of the federal statute has been construed in many cases, and its constitutionality has apparently never been seriously questioned. The Supreme Court of the United States concluded that the purpose of directing the issuance of grandfather certificates to motor carriers in bona fide operation as of June 1, 1935 was to maintain "substantial parity between future operations and prior bona fide operations." *Alton R.R. Co. v. U. S.,* 315 U.S. 15, 22, 62 S.Ct. 432, 437, 86 L.Ed. 586 (1942).

Judge Learned Hand stated that the provision requiring the issuance of certificates of convenience and necessity without proof and without further proceedings to operat-

ing carriers on the effective date of the federal statute

" . . . was apparently inserted to avoid the hardship which would result from forcing a carrier to justify his existing business in terms of public convenience. It was meant to accept the motor vehicle system as it was; it recognized as vested such rights as had grown up before Congress asserted any public interest in motor transportation; and consistently, the rights protected should be measured by past user." *Crescent Express Lines, Inc. v. U. S.,* 49 F.Supp. 92, 94 (S.D.N.Y.1943), *aff'd* 320 U.S. 401, 64 S.Ct. 167, 88 L.Ed. 127 (1943).

Since the language of the 1975 Tennessee statute here under consideration, insofar as it directs the issuance of grandfather certificates, so closely parallels that used by Congress in the Federal Motor Carrier Act, the interpretation given to the latter statute by the federal courts is persuasive as to the meaning, purpose and intention of the statute.

The 1975 act does not, by its terms, apply to any specified individuals or to any isolated carriers, but it pertains to all motor carriers coming within its terms—that is, all which were engaged in bona fide operations on May 17, 1971 in any municipality of the state. It is by no means confined, either expressly or by implication, to carriers operating in the City of Memphis. Any carrier in the state coming within its terms and making timely application could obtain the benefits of the 1975 statute. As previously stated, the 1975 statute is, in essence, no more than a belated grandfather clause to the 1971 enactment. If the General Assembly could validly have included it in the 1971 act, as appellants apparently concede, we know of no reason why the Legislature could not insert it into the 1971 statute by subsequent amendment, and make its terms apply to carriers operating on the effective date of the original act. The General Assembly has very broad power to amend or revise statutes or by subsequent legislation make an original enactment conform to the legislative intent. It may ratify that which

it could originally have authorized. *Malone v. Peay,* 159 Tenn. 321, 17 S.W.2d 901 (1929).

We are of the opinion that the 1975 statute has not been shown to violate the constitutional provisions against unreasonable class legislation. It entitled any timely applicant to a grandfathered certificate, subject, of course, to a proper showing before the Commission that bona fide operations were being conducted as of May 17, 1971.

The judgment of the Chancellor is affirmed at the cost of appellants.

COOPER, C. J., and FONES and BROCK, JJ., concur.

HENRY, J., not participating.

### Appendix

T.C.A. 65–1503(e) as amended by Chapter 349 of the Public Acts of 1975 exempts motor vehicles:

" . . . while used exclusively in city transfer service by way of transporting property for hire between points in any one (1) town, city or suburb thereof, not over or along any definite, fixed, announced, or advertised routes between any points in such one (1) city, town or the suburbs thereof; provided, however, that this exemption shall not apply to motor vehicles transporting petroleum products and other hazardous materials, in bulk, in tank trucks or trailers, for hire, other than those owned or operated by any person, firm or corporation engaged on May 17, 1971 in providing such transport services, unless they are exempt under subsection (i) of this section; and provided further, that if a carrier were in bona fide operations on May 17, 1971, the commission shall issue a certificate of convenience and necessity or contract hauler's permit authorizing such operations without requiring proof that the public convenience and necessity will be served thereby and without further proceedings, if such application for such certificate or permit is filed within one hundred twenty (120) days after June 9, 1975. Provided, that no funds received by the public service commission under the provisions of this section may be used for purposes of funding any retirement benefit for any person, to secure actuarial soundness, nor to improve any retirement plan or benefit; and provided further that this exemption shall not apply to contract haulers engaged in the transportation of mobile homes; provided, however, that the contract haulers performing these services as prescribed by this chapter be given thirty (30) days to apply to the public service commission for the authority to continue operation. . ."